[Cite as *State v. Hudson*, 2013-Ohio-647.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO. 9-12-38

     v.

LARRY DEAN HUDSON,            O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 11-CR-0647

Judgment Affirmed

Date of Decision: February 25, 2013

APPEARANCES:

     *Jeff Ratliff* for Appellant

     *Brent W. Yager* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Larry Dean Hudson, appeals the Marion County Court of Common Pleas' judgment entry of conviction and sentence stemming from his failure to provide notice of his change of address for purposes of his sexual offender registration. For the reasons that follow, we affirm.

{¶2} On September 26, 1996, Hudson was convicted of gross sexual imposition in the Court of Common Pleas for Marion County, Ohio in Case Number 96-CR-0207, a felony of the fourth degree.[1] Hudson was sentenced to a term of six (6) months in prison with the sentence to run consecutively to a twelve (12) month prison term imposed in Marion County Common Pleas Court Case Number 95-CR-0090.

{¶3} At the time of Hudson's 1996 conviction, Ohio was operating under the federally mandated *Jacob Wetterling Act*, 42 U.S.C. §§ 14071, et seq., codified in Ohio Revised Code Chapter 2950.

{¶4} The Ohio General Assembly passed H.B. 180, the State's version of the federally mandated *Megan's Law*, with an effective date of July 1, 1997. On that date, Hudson was still serving the term of imprisonment for gross sexual imposition imposed in 1996. Therefore, he was subject to the provisions of the new *Megan's Law* pursuant to the newly enacted O.R.C. § 2950.04(A).

---

[1] The procedural history of this case comes directly from the parties' stipulation of facts. (Doc. No. 39).

{¶5} While still incarcerated, Hudson was notified by the Ohio Department of Rehabilitation and Corrections and the trial court that his sex offender registration status would be determined pursuant to the 1997 version of O.R.C. § 2950.09(C)(1).

{¶6} On October 21, 1997, the trial court determined, without a hearing, that Hudson was not a sexual predator. Other than the court order issued on October 21, 1997, no other court or parole board has ever held a hearing to determine Hudson's duty to register as a sex offender.

{¶7} On or about October 30, 1997, Hudson was notified by the Marion County Sheriff's Office that he would be required to register as a sexually oriented offender upon his release from prison; that he would be required to register for a period of ten (10) years; and, that he was required to register with the Sheriff's office by November 5, 1997.

{¶8} Since October 1997, Hudson had served four (4) additional prison terms, including terms of incarceration of four (4) years, six (6) months, eight (8) months and fourteen (14) months for convictions stemming from non-sex offenses in 2000, 2006, 2007, and 2010. No additional duties to register as a sex offender were imposed on Hudson in any of these subsequent convictions.

{¶9} Since his initial registration date, Hudson had registered with the Marion County Sheriff's Office and has signed several notices of explanations of duties to register.

{¶10} On March 31, 1999, Ohio's 1998 H.B. 565 became effective, which was codified under newly enacted O.R.C. § 2950.07(D).

{¶11} On August 1, 2008, Ohio's version of the federally mandated *Adam Walsh Act* became effective. Subsequently, the Ohio Attorney General designated Hudson as a Tier II sex offender. Hudson was notified that he would have to register for twenty-five (25) years with verification every 180 days after the initial registration.

{¶12} On June 2, 2011, Hudson was released from prison on a 2010 conviction. He registered at his sister's address at 412 East Farming Street, Marion, Ohio as his residence with the Marion County Sheriff's Office. He was informed by the Agency that he was required to comply with the provisions of the *Adam Walsh Act*.

{¶13} On August 23, 2011, the Marion County Sheriff's Office in conjunction with the U.S. Marshall's Office conducted a county-wide sweep to check sex offender registrations. On arriving at Hudson's registered residential address, it was discovered he had not lived there for more than one (1) month.

{¶14} Hudson failed to notify the Marion County Sheriff's Office that he was no longer residing at 412 East Farming Street, Marion, Ohio.

{¶15} On the annual verification date for Hudson's sex offender registration, Hudson did not appear at the Sheriff's office to verify his registration information. When Hudson failed to appear on September 1, 2011, a certified letter was sent to his registered address of 412 East Farming Street, Marion, Ohio advising him that he was required to complete his annual verification by September 14, 2011. Hudson again failed to appear.

{¶16} On December 15, 2011, Hudson was arrested by officers of the Marion County Sheriff's Office. He advised the arresting officers that he failed to notify the Sheriff's Office of the change of address as he was homeless on leaving his sister's residence.

{¶17} The only conviction that could impose a duty upon Hudson to register as a sex offender was his 1996 conviction for gross sexual imposition.[2]

{¶18} On December 21, 2011, the Marion County Grand Jury indicted Hudson on Count One of failure to provide notice of change of address in violation of R.C. 2950.05(A), a third degree felony, and Count Two of failure to verify sex offender registration in violation of R.C. 2950.05(A), a third degree felony. (Doc. No. 1).

---

[2] This ends the portion of facts stipulated to by the parties herein. (Doc. No. 39).

{¶19} On December 27, 2011, Hudson was arraigned and entered a plea of not guilty. (Doc. No. 5).

{¶20} On February 22, 2012, Hudson filed a motion to dismiss the indictment arguing that he was no longer required to register as a sex offender since his ten-year registration period had already expired. (Doc. No. 16).

{¶21} On March 1, 2012, the State filed a memorandum in opposition to Hudson's motion to dismiss, arguing that Hudson was a "sexually oriented offender," by operation of Megan's Law enacted in R.C. 2950.04(A)(1), and required to register for ten years per R.C. 2950.07(B)(3). (Doc. No. 22). The State further argued that Hudson's ten-year registration period was tolled while he was incarcerated on unrelated offenses pursuant to R.C. 2950.07(D), enacted by H.B. 565 and effective March 31, 1999. (*Id.*). According to the State, Hudson's registration period will not expire before October 2013. (*Id.*).

{¶22} On March 13, 2012, Hudson filed a memorandum in opposition to the State, arguing that the application of R.C. 2950.07(D)'s tolling provision, effective after his conviction, would violate the Ex Post Facto Clause of the U.S. Constitution and Section 28, Article II of the Ohio Constitution. (Doc. No. 26).

{¶23} On April 24, 2012, the trial court overruled Hudson's motion to dismiss. (Doc. No. 32).

{¶24} On May 24, 2012, the trial court held a change of plea hearing. (Doc. No. 43). Upon the State's motion, the trial court dismissed the indictment; Hudson waived the requirement for an indictment; and, Hudson pled no contest to a bill of information charging him with one count of failure to provide notice of change of address in violation of R.C. 2950.05(A), a third degree felony. (Doc. Nos. 34, 38, 43). The parties entered a written stipulation of facts for the trial court to adopt along with Hudson's no contest plea to the bill of information. (Doc. No. 39). The trial court found Hudson guilty and sentenced him to two years of community control. (Doc. No. 43). The trial court stayed Hudson's sentence pending appeal. (Doc. No. 36). On June 6, 2012, the trial court filed its judgment entry of conviction and sentence. (Doc. No. 43).

{¶25} On July 5, 2012, Hudson filed a notice of appeal. (Doc. No. 48). Hudson now appeals raising two assignments of error for our review.

### Assignment of Error No. I

**The tolling provision contained in O.R.C. §2950.07(D) is unconstitutional as it violates Section 28, Article II of the Ohio Constitution because (1) the General Assembly did not express a clear declaration that the tolling provision would be applied retroactively, and (2) the tolling provision is punitive as it applies to pre-1998 H.B. 565 offenders.**

{¶26} In his first assignment of error, Hudson argues that his ten-year registration period under *Megan's Law* commenced on his release from prison, October 29, 1997, and therefore, terminated on October 29, 2007. Hudson argues

that R.C. 2950.07(D), which tolls the registration period for any time during which the offender is re-incarcerated and was effective subsequent to his conviction (on March 31, 1999), does not apply retroactively; and, if it does, violates Section 28, Article II of the Ohio Constitution, the prohibition against ex post facto laws.

{¶27} This case requires both the interpretation of a statute and a determination regarding its constitutionality, which are issues of law we review de novo. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 8 (statutory interpretation); *City of Akron v. Callaway*, 162 Ohio App.3d 781, 2005-Ohio-4095, ¶ 23 (9th Dist.). (constitutionality); *Andreyko v. City of Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, ¶ 11 (1st Dist.) (same). De novo review is independent, without deference to the lower court's decision. *See Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

{¶28} "'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional, it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" *State v. Cook*, 83 Ohio St.3d 404, 409 (1998), quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus. "That presumption applies to amended R.C. Chapter 2950 * * * and remains unless [the appellant] establishes, beyond reasonable doubt, that the statute is unconstitutional." *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824,

¶ 12, citing *Cook*, 83 Ohio St.3d at 409; *Roosevelt Properties Co. v. Kinney*, 12 Ohio St.3d 7, 13 (1984).

{¶29} Notwithstanding the presumption of constitutionality, Section 28, Article II of the Ohio Constitution prohibits the General Assembly from retroactively impairing a vested, substantive right. *Consilio*, 2007-Ohio-4163, at ¶ 9, citing *State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, ¶ 13. However, the General Assembly may make legislation retroactive if it is merely remedial in nature. *Id.*, citing *State ex rel. Slaughter v. Indus. Comm.*, 132 Ohio St. 537, 542 (1937). Statutes are presumed to apply prospectively unless expressly declared to be retroactive. *LaSalle* at ¶ 14, citing R.C. 1.48 and *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 105 (1988); *Ferguson*, 2008-Ohio-4824, at ¶ 15, citing *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, ¶ 10.

{¶30} To determine whether a statute may be applied retroactively requires a two-part test. *Consilio* at ¶ 10; *Ferguson* at ¶ 13. First, the reviewing court must determine, as a threshold matter, whether the General Assembly expressly made the statute retroactive. *Consilio* at ¶ 10, citing *LaSalle*, at ¶ 14, citing *Van Fossen*, 36 Ohio St.3d 100, at paragraphs one and two of the syllabus; *Ferguson* at ¶ 13-14. "The General Assembly's failure to clearly enunciate retroactivity ends the analysis, and the relevant statute may be applied only prospectively." *Consilio* at ¶ 10; *Ferguson* at ¶ 13. If the statute is retroactive, though, the reviewing court

must then determine whether it is substantive or remedial in nature. *Consilio* at ¶ 10, citing *LaSalle* at ¶ 14; *Ferguson* at ¶ 13.

{¶31} As amended by Am. Sub. H.B. 565, R.C. 2950.07(D), the tolling provision at issue here, provided:

> The duty of an offender to register under this chapter is tolled for any period during which the offender is returned to confinement for any reason or imprisoned for an offense *when the confinement or imprisonment occurs subsequent to the date determined pursuant to division (A) of this section.* The offender's duty to register under this chapter resumes upon the offender's release from confinement or imprisonment.

(Emphasis added) (Eff. 3-30-99). R.C. 2950.07(A), referenced in division (D) above, provided for the commencement date of the registration requirements codified in R.C. Sections 2950.04, 2950.05, and 2950.06. R.C. 2950.07(A) described the type of offender for whom the registration requirement commenced as "an offender who is convicted of or pleads guilty to, or *has been convicted of* or pleaded guilty to, a sexually oriented offense * * *." (Emphasis added) (Eff. 3-30-99). R.C. 2950.04, which codified the actual duty to register, provided:

> (A) Each offender who is convicted of or pleads guilty to, *or has been convicted of* or pleaded guilty to, a sexually oriented offense

and who is described in division (A)(1), (2), or (3) of this section shall register with the sheriff of the following applicable county and at the following time:

(1) *Regardless of when the sexually oriented offense was committed*, if the offender is sentenced for the sexually oriented offense to a prison term, a term of imprisonment, or any other type of confinement *and if, on or after July 1, 1997, the offender is released* in any manner from a prison term, term of imprisonment, or confinement, within seven days of the offender's coming into any county in which the offender resides or temporarily is domiciled for more than seven days, the offender shall register with the sheriff of that county.

(Emphasis added) (Eff. 3-30-99).

{¶32} Hudson acknowledges that the Ohio Supreme Court has already determined that the General Assembly intended R.C. 2950.04(A) to apply retroactively and that the registration requirements found in *Megan's Law* are remedial in nature. *Cook*, 83 Ohio St.3d at 410-413. Nevertheless, Hudson argues that the General Assembly did not expressly state that R.C. 2950.07(D) was to apply retroactively; and therefore, R.C. 1.48's presumption of prospective

application governs. Hudson relies heavily upon the Ohio Supreme Court's decision in *Hyle v. Porter* in support of his position. 2008-Ohio-542.

**{¶33}** In *Hyle v. Porter*, the Ohio Supreme Court analyzed the retroactivity of R.C. 2950.031, which prohibited convicted sex offenders from residing within 1,000 feet of any school premises. 2008-Ohio-542, at ¶ 4. The statute provided that:

> No person who has been convicted of, is convicted of, or has pleaded guilty to, or pleads guilty to either a sexually oriented offense that is not a registration-exempt sexually oriented offense or a child-victim oriented offense shall establish a residence or occupy residential premises within one thousand feet of any school premises.

*Id*. Hyle, the chief legal officer of Green Township, obtained a permanent injunction prohibiting Porter, a convicted sex offender, from continuing to occupy his residence that was located within 1,000 feet of a school premises. *Id*. at ¶ 5. Porter appealed the trial court's injunction, but the appellate court affirmed holding that R.C. 2950.031 could be applied retroactively to sex offenders, like Porter, who bought his home and committed his offense before the effective date of the statute. *Id*. at ¶ 6.

-12-

{¶34} On appeal to the Ohio Supreme Court, Hyle argued that the General Assembly expressed its intent to apply R.C. 2950.031 retroactively because: (1) the statute used both present and past tense verbs to describe the convicted sex offenders; to wit: "[n]o person who *has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to* [specified categories of sexual offenses] * * *"; and (2) "R.C. Chapter 2950 as a whole supports the General Assembly's retroactive intent." *Id*. at ¶ 11, 23. Amicus curiae Attorney General of Ohio argued that the statute's phrase "shall establish a residence or occupy residential premises" describes two categories of prohibited behavior and that unless the term "occupy" was interpreted to mean "continue to occupy," the phrases "shall establish a residence" and "occupy residential premises" were redundant. *Id*. at ¶ 12. Therefore, the Attorney General argued that the statute applied to sex offenders who purchased their homes before or after the effective date of the statute. *Id*.

{¶35} The Ohio Supreme Court rejected each of these arguments, however. The Court determined that the statute's use of past and present tense verbs to describe the types of sex offenders and the statute's description of the prohibited acts presented a mere "*suggestion* of retroactivity" rendering the statute "ambiguous" and was not a "clear declaration of retroactivity * * * sufficient to overcome the presumption of prospective application" *Id*. at ¶ 13 (emphasis sic).

The Court also rejected Hyle's argument that R.C. Chapter 2950 as a whole was enough to convey the legislature's intent to make R.C. 2950.031 retroactive, because it would reverse R.C. 1.48's presumption of prospective application. *Id.* at ¶ 23.

{¶36} In a subsequent case, however, the Ohio Supreme Court determined that the legislature intended the S.B. 5 amendments to R.C. Chapter 2950 to apply retroactively. *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824. The statutes at issue in *Ferguson* were former R.C. 2950.07(B)(1), which provided for a lifetime designation of "sexual predator," as well as the concomitant duty to register; former R.C. 2950.04(A), which provided increased registration requirements; and, former R.C. 2950.081, which expanded the community-notification requirements. *Id.* at ¶ 8-10.

{¶37} The Court's retroactivity analysis in *Ferguson* differed from its retroactivity analysis in *Hyle*. Initially, the Court in *Ferguson*, consistent with its analysis in *Hyle*, examined the text of R.C. 2950.04(A)(1) and determined that the General Assembly intended it to be applied retroactively, because the statute specifically stated that it applied "[r]egardless of when the child-victim oriented offense was committed." *Id.* at ¶ 16-17. With respect to R.C. 2950.07(B)(1) and R.C. 2950.081, though, the Court determined that the General Assembly intended these provisions to be retroactive without relying upon any express language in the

sections themselves. *Id.* at ¶ 18-25; *Id.* at ¶ 48-50 (Lanzinger, J., dissenting). Instead, the Court reasoned that the General Assembly intended retroactive application of these provisions since the Court had interpreted the former statute governing sex-offender classifications, R.C. 2950.09(C)(1), as retroactive in *Cook*, and none of the S.B. 5 amendments altered this interpretation. *Id.* at ¶ 25.

**{¶38}** Hudson urges this Court to follow the Ohio Supreme Court's retroactivity analysis in *Hyle* and not its retroactivity analysis in *Ferguson*. Hudson's arguments notwithstanding, R.C. 2950.07(D) is distinguishable from R.C. 2950.031, at issue in *Hyle*; and therefore, *Ferguson* is instructive. R.C. 2950.07(D) does not merely use present and past verb tenses to describe the type of sex offenders for whom the statute applies like R.C. 2950.031; but rather, R.C. 2950.07(D) both indirectly and directly incorporates R.C. 2950.04(A)'s duty to register, which duty the Ohio Supreme Court already found retroactive in *Cook*.

**{¶39}** R.C. 2950.07(D) begins by stating that "[t]he duty of an offender to register *under this chapter * * **" thereby indirectly incorporating R.C. 2950.04(A). Thereafter, R.C. 2950.07(D) directly incorporates R.C. 2950.04(A) via R.C. 2950.07(A). R.C. 2950.031, on the other hand, did not directly incorporate the registration requirement in R.C. 2950.04(A). Furthermore, unlike R.C. 2950.031, which was enacted in its entirety as a separate, additional prohibition for sex offenders by S.B. 5, R.C. 2950.07(D) was enacted by H.B. 565

as part of an already-existing statutory registration scheme. Also, unlike R.C. 2950.07(D), R.C. 2950.031 contained its own remedial mechanism. R.C. 2950.031(B). The fact that R.C. 2950.031 was enacted in its entirety by S.B. 5 and contained its own remedial mechanism without reference to another statutory provision may very well explain why the Court in *Hyle* required a clear expression of retroactive intent within the statutory provision itself.

{¶40} Like the statutory provisions at issue in *Ferguson*, our retroactivity analysis of R.C. 2950.07(D) does not begin on a blank slate. 2008-Ohio-4825, at ¶ 21. The General Assembly was certainly aware of the Court's interpretation of R.C. 2950.04(A) in *Cook* when it enacted R.C. 2950.07(D). *Id.* at ¶ 22, 25. The registration requirement that R.C. 2950.07(D) tolls had already been declared retroactive. *Cook*, 83 Ohio St.3d at 410. By directly incorporating the retroactive registration requirement in R.C. 2950.04(A), the General Assembly sufficiently expressed its intent to make R.C. 2950.07(D) retroactive as well. This language is more expressive of the General Assembly's retroactive intent than the language contained in former R.C. 2950.081 and 2950.07(B)(1) found retroactive in *Ferguson*. Accordingly, we conclude that the General Assembly intended R.C. 2950.07(D) to be applied retroactively.

{¶41} Next, we must determine whether R.C. 2950.07(D) is substantive or remedial in nature. *Consilio*, 2007-Ohio-4163, at ¶ 10, citing *LaSalle*, 2002-Ohio-

4009, at ¶ 14; *Ferguson*, 2008-Ohio-4824, at ¶ 13. The Court of Appeals for the Second District has already determined that R.C. 2950.07(D) is remedial in nature. *State v. Hancock*, 2d Dist. No. 24653, 2012-Ohio-1435, ¶ 10. In concluding that R.C. 2950.07(D) is remedial in nature, the Court in *Hancock* reasoned:

> Given that the ten-year registration and address verification requirements in the "Megan's Law" version of R.C. Chapter 2050 can be applied retroactively, *Cook*, supra, we conclude that the tolling provision extending the ten-year period when an offender is re-incarcerated is likewise remedial in nature.

*Id.*

{¶42} We agree with the Second District that if the registration requirement itself is remedial, then a tolling provision that further effectuates the remedial purpose of that requirement is also remedial in nature. In enacting *Megan's Law*, the General Assembly declared:

> [s]exual predators and habitual sex offenders pose a high risk of engaging in further offenses even after being released from imprisonment, a prison term, or other confinement and that protection of members of the public from sexual predators and habitual sex offenders is a paramount governmental interest.

-17-

R.C. 2950.02(A)(2). Consequently, the primary remedial purpose behind the sex offender registration law was to protect the public by providing notification of potential sex offenders *living in their neighborhood*. *Cook*, 83 Ohio St.3d 404, 416, citing former R.C. 2950.02(B). The General Assembly also provided law enforcement with tools to help prevent sex-offender recidivism. *Id*. Contrary to Hudson's arguments, the General Assembly's intent of protecting the public is not served while the offender is imprisoned—the intent was to protect the public upon the offender's release from imprisonment when the offender is living in the community. The tolling provision furthers this remedial purpose by providing notification to the public when it matters most—when the sex-offender is released from prison and living in the community. Absent the tolling provision, the public is deprived of the safety benefit of the full ten-year registration period for sex offenders, like Hudson, who are subsequently re-incarcerated. Furthermore, the General Assembly's purpose of reducing sex-offender recidivism is thwarted absent the tolling provision. For these reasons, we conclude, like the Second District, that R.C. 2950.07(D) is remedial in nature.

{¶43} Since R.C. 2950.07(D) is remedial in nature, it does not violate Section 28, Article II of the Ohio Constitution, and it was properly applied to Hudson in this case. *Cook*, 83 Ohio St.3d at 411, citing *Van Fossen*, 36 Ohio St.3d at 107.

**{¶44}** Hudson's first assignment of error is, therefore, overruled.

### Assignment of Error No. II

**The trial court erred in denying Appellant's motion to dismiss as the tolling provision of former O.R.C. §2950.07(D) violated Appellant's rights to due process of law.**

**{¶45}** In his second assignment of error, Hudson argues that R.C. 2950.07(D) violated his right to procedural due process, because he was not provided notice that his registration duty would be extended by any time he was incarcerated for an unrelated, non-sex crime. Hudson also argues that his only meaningful opportunity to challenge his continued registration duty was to violate the law, which is a denial of due process.

**{¶46}** As an initial matter, we note that Hudson did not raise this issue before the trial court; instead, he focused on the retroactive application of S.B. 10, *The Adam Walsh Act* (AWA), and the retroactive application of R.C. 2950.07(D)'s tolling provision under *Megan's Law*, as amended by H.B. 565. (Doc. No. 16). In its memorandum in opposition to Hudson's motion to dismiss, the State conceded that the AWA could not be applied to Hudson in light of *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374. (Doc. No. 22). Nevertheless, the State contended that Hudson still had to comply with the 10-year registration requirement under *Megan's Law* and that Hudson's 10-year registration period had not expired by virtue of R.C. 2950.07(D)'s tolling provision. (*Id.*). In response,

Hudson argued that, as applied to him, R.C. 2950.07(D) violated the Ex Post Facto Clause of the U.S. Constitution and Section 28, Article II of the Ohio Constitution. (Doc. No. 26).

{¶47} Now, on appeal Hudson raises several procedural due process arguments. The failure to raise an issue in the lower court waives all but plain error on appeal. *State v. Lorraine*, 66 Ohio St.3d 414, 416 (1993), citing *State v. Moreland*, 50 Ohio St.3d 58 (1990) and *State v. Broom*, 40 Ohio St.3d 277 (1988). Nevertheless, the denial of basic procedural due process amounts to plain error under Crim.R. 52(B). *Columbus v. Bickel*, 77 Ohio App.3d 26, 35-36 (10th Dist.1991). *See also State v. Coe*, 153 Ohio App.3d 44, 2003-Ohio-2732, ¶ 19 (4th Dist.). Consequently, we will review Hudson's procedural due process claims.

{¶48} The right to procedural due process is protected by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, ¶ 6. A sex offender must demonstrate that he was deprived of a protected liberty or property interest as a result of the registration requirement to trigger protections under these clauses. *Id.*, citing *Steele v. Hamilton Cty. Community Mental Health Bd.*, 90 Ohio St.3d 176, 181 (2000). Although due process is "'flexible and calls for such procedural protections as the particular situation demands,'" *Mathews v. Eldridge*,

424 U.S. 319, 332, 96 S.Ct. 893 (1976), quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593 (1972), the basic requirements of procedural due process are notice and an opportunity to be heard. *Hayden*, 2002-Ohio-4160, at ¶ 6, citing *State v. Hochhausler*, 76 Ohio St.3d 455, 459 (1996).

{¶49} R.C. 2950.03 provides for notice to convicted sex-offenders of their duty to register; to provide notice of a change in their residence address or in their school, institution of higher education, or place of employment address, as applicable, and register the new address; and, to periodically verify their residence address or their school, institution of higher education, or place of employment address, as applicable. R.C. 2950.03(B).

{¶50} The record indicates that Hudson was provided with such notice on multiple occasions, including: October 30, 1997, August 13, 2003, November 24, 2004, December 9, 2004, July 13, 2005, September 21, 2005, April 26, 2006, September 11, 2006, May 7, 2007, August 17, 2007, September 2, 2008, February 6, 2009, August 5, 2009, May 20, 2010, and June 15, 2011.  (Joint Ex. 7).  The parties also stipulated that, on June 2, 2011 upon his release from prison, Hudson registered his sister's address at 412 East Farming Street, Marion, Ohio as his residence with the Marion County Sheriff's Office.  Now, on appeal Hudson alleges that he thought his duty to register ended on October 29, 2007—yet the

notices he received and his own actions refute that claim. Consequently, we are not persuaded that Hudson lacked notice of his continued duty to register.

**{¶51}** Finally, Hudson argues that he was deprived procedural due process because he could not challenge his continued duty to register without violating the law. Hudson cites *State v. Cowan* in support of his argument. 103 Ohio St.3d 144, 2004-Ohio-4777. The classification in *Cowan* is strikingly different than the classification at issue in this case. In *Cowan*, R.C. 955.22 empowered a deputy dog warden, an executive officer, to classify the defendant's dogs as "vicious dogs" without any hearing after the defendant's neighbor merely alleged that the defendant's dogs bit his wife. 2004-Ohio-4777, at ¶ 1, 11. Unlike the executive officer's classification in *Cowan*, Hudson's sexual offender classification stemmed from his 1996 conviction for gross sexual imposition. Consequently, unlike the executive classification in *Cowan*, Hudson's classification occurred only after he was afforded full procedural due process; namely, a trial on the merits. Therefore, the facts sub judice are distinguishable from the facts in *Cowan*.

**{¶52}** Moreover, we note that Hudson was not entitled to a hearing to challenge his *initial* duty to register as a sexually oriented offender since that duty attached as a matter of law. Former R.C. 2950.04(A)(1) and R.C. 2950.07(B)(3); *Hayden*, 2002-Ohio-4169, paragraph two of the syllabus. Hudson's *continued* obligation to register as a sexual offender per R.C. 2950.07(D) also attached as a

matter of law. Since Hudson was not entitled to a further hearing to challenge his initial duty to register as a sexual offender, we conclude that he was not entitled to a further hearing to challenge his *continued* obligation to register per R.C. 2950.07(D) since that continued duty also attached as a matter of law and stemmed from Hudson's original conviction.

{¶53} Hudson's second assignment of error is, therefore, overruled.

{¶54} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**