[Cite as *State v. Moore*, 2020-Ohio-6781.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                    Court of Appeals No. E-18-064

     Appellee                              Trial Court No. 2017 CR 0347

v.

Gerry L. Moore, Sr.                        **DECISION AND JUDGMENT**

     Appellant                             Decided:  December 18, 2020

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**SINGER, J.**

## I.  Introduction

{¶ 1} Appellant, Gerry Moore, Sr., appeals the judgment of the Erie County Court

of Common Pleas, sentencing him to 22 years in prison after a jury found him guilty of

retaliation, attempted aggravated murder, and conspiracy to commit aggravated murder.

## A. Facts and Procedural Background

{¶ 2} On August 9, 2017, appellant was indicted on one count of retaliation in violation of R.C. 2921.05 (B) and (C), a felony of the third degree, one count of attempted aggravated murder in violation of R.C. 2923.02(A), and 2903.01(A) and (F), a felony of the first degree, and one count of conspiracy to commit aggravated murder in violation of R.C. 2923.01(A)(1) and (J)(2), a felony of the second degree. These charges stemmed from events that transpired over a period of time beginning on April 21, 2017 and ending on July 6, 2017, in which appellant conspired to kill his ex-wife, Diane, while incarcerated in Marion County, Ohio.

{¶ 3} On August 29, 2017, appellant appeared before the trial court for arraignment, at which he entered a plea of not guilty to the aforementioned charges. Thereafter, the parties conducted pretrial motion practice and discovery.

{¶ 4} On October 9, 2018, appellant filed his "objection to venue in this court," in which he asserted that Marion County, and not Erie County, was the proper venue and thus requested a transfer of the proceedings to Marion County. Since he was incarcerated in Marion County during the entire time period set forth in the indictment, appellant contended that none of the criminal acts that were alleged by the state could have taken place in Erie County. In response, the state noted that Diane resides in Erie County. Therefore, the state reasoned that "[i]f Defendant's acts were completed the murder would take place in Erie County, Ohio where [Diane] resides. Therefore, venue is proper

2.

in Erie County, Ohio, in this Court * * *." Upon consideration of the parties' arguments, the trial court summarily denied appellant's motion on October 23, 2018.

{¶ 5} Eventually, the matter proceeded to a four-day jury trial on October 29, 2018. Following jury selection, the matter proceeded through preliminary jury instructions, the parties' opening statements, and ultimately to the state's case-in-chief. For its part, the state called three witnesses.

{¶ 6} As its first witness, the state called appellant's ex-wife, Diane Moore. After many years of marriage, Diane filed for divorce in May 2015. Prior to the finalization of the divorce proceedings, on June 26, 2015, an incident occurred in which appellant broke into Diane's apartment, held her at gunpoint, and forced her into her vehicle. After appellant exited Diane's garage, Diane jumped out of the vehicle and ran off, in fear for her life. Appellant then fired his handgun in Diane's direction as she was running away. Diane notified law enforcement of the incident, and appellant was eventually apprehended after he shot himself. Appellant was subsequently imprisoned after pleading guilty to felonious assault, kidnapping, failure to comply, and inducing panic in connection with this incident.

{¶ 7} For its second witness, the state called Richard Kiser. Like appellant, Kiser is currently incarcerated. During the time period relevant to the present action, Kiser was placed at Marion Correctional, where he met and befriended appellant. According to Kiser, appellant would "rant about his divorce" from time to time and blame Diane for his incarceration. Eventually, appellant approached Kiser and asked him to murder

3.

Diane. Specifically, Kiser testified that "one day [appellant] came to my bed all mad and stuff, and was talking about he wanted his wife killed, and he told me, he said, I'll give you $50,000 if you kill her when * * * you get out of prison."

{¶ 8} Later in his testimony, Kiser explained that appellant asked him to go to two bars, Hunter's and Third Base, establishments that Diane frequented, get acquainted with her, and "slip her a lethal dose of drugs to end her life." Because Kiser had never been to these establishments, appellant drew him a map of their locations, as well as the locations of Diane's residence and place of employment. The map was entered into evidence at trial.

{¶ 9} Kiser continued to discuss appellant's proposition with appellant for several months after appellant first approached him. Because he determined that appellant's threats were serious, Kiser decided to reach out to Diane's attorney. Kiser proceeded to research the matter and obtained contact information for Diane's attorney. On April 17, 2017, Kiser wrote a letter to Diane's attorney, notifying him of appellant's plan to have Diane murdered. Kiser mailed his letter to the attorney's Erie County address. The letter was entered into evidence at trial.

{¶ 10} The following month, Kiser was contacted by Erie County law enforcement officials in response to his letter. During the ensuing conversation, Kiser agreed to cooperate with law enforcement by wearing a recording device during his discussions with appellant. Kiser stated that he wore the device around the prison for a period of two weeks. The audio recordings of Kiser's conversations with appellant were played at trial.

4.

{¶ 11} In the recorded conversations, appellant discussed his plan to murder Diane. Specifically, appellant stated: "I don't care where it's at, I'll do it in the fuckin store. I'll walk right in the fuckin store and put the bullet with a fuckin gun right between her fuckin eyes." Appellant went on to instruct Kiser to plant drugs in the car belonging to Diane's niece, in an attempt to frame her for Diane's death. During the conversation, appellant provided directions to Kiser and referenced the map that he drew for Kiser. Kiser testified that appellant discussed several potential locations for the murder, all of which were within Erie County.

{¶ 12} As its third and final witness, the state called deputy Jared Oliver of the Erie County Sheriff's Office. Oliver testified that he was on duty when dispatch received the 911 call reporting the June 26, 2015 incident in Erie County involving appellant, whom he had known for years, and Diane. Upon receiving the call, Oliver responded to the scene, and ultimately participated in the ensuing standoff between appellant and law enforcement officials. After appellant was apprehended and indicted in connection with the June 26, 2015 incident, Oliver participated in the criminal proceedings, including the plea negotiations that culminated in appellant's guilty plea and subsequent incarceration.

{¶ 13} Approximately two years later, in April 2017, Oliver was contacted by the Erie County Prosecutor's Office and provided a copy of the letter Kiser drafted to Diane's attorney. Thereafter, Oliver contacted Diane and informed her of the murder plot referenced in Kiser's letter. In response to the letter, Oliver visited Kiser at the Marion Correctional Institution in May 2017.

5.

{¶ 14} During Oliver's discussion with Kiser, Kiser indicated that he knew where Diane lived, what type of vehicle she drove, and the fact that Diane's vehicle had personalized license plates. Kiser then informed Oliver that he was approached by appellant and offered $50,000 in exchange for murdering Diane after his anticipated release from prison on parole. Ultimately, Kiser agreed to wear a recording device after Kiser provided further details concerning the murder plot, which he did in June 2017.

{¶ 15} Two months later, on August 29, 2017, Oliver interviewed appellant in the holding area of the Erie County Courthouse. According to Oliver, appellant denied propositioning Kiser to murder Diane. Rather, appellant insisted that Kiser approached him and offered to murder Diane in exchange for $50,000. Appellant admitted that he had drawn maps for Kiser, but stated to Oliver that he did so because he was trying to assist Kiser with acquiring a job as a mason after his release.

{¶ 16} At the close of the state's case-in-chief, appellant moved for an acquittal under Crim.R. 29. In support of his motion, appellant argued that the state's retaliation charge could not be sustained because there was no evidence that his alleged threats, which took place during private communications with Kiser, were ever communicated to, or received by, the victims. Appellant further argued that the state's evidence was insufficient as to venue. Specifically, appellant contended that Marion County, not Erie County, was the appropriate venue in this case because all of the events giving rise to the charges contained in the indictment took place while appellant was incarcerated in Marion County.

6.

{¶ 17} In response, the state argued that its evidence was sufficient to support the charge of retaliation, because appellant's threats against Diane were communicated to her two months prior to the recording of appellant's conversations with Kiser. Moreover, the state asserted that venue in Erie County was proper because,

> the retaliation did happen out of the case in 2015 that the Defendant was prosecuted for. That is the count that is Erie County which gives this court jurisdiction to hear this case. All those facts were laid * * * for the witnesses, and they all testified to the fact that that 2015 case, which is the basis for the retaliation, happened in Erie County, therefore the retaliation of a victim in that case has to be in Erie County because that's where the case was heard.
>
> The other two counts are in Marion County, however it's a continuous course of conduct, and if * * * venue is – for the retaliation lies in Erie County, Erie County then has the authority to hear the entire case.

{¶ 18} Upon consideration of the foregoing arguments, the trial court denied appellant's Crim.R. 29 motion, finding that venue was proper under R.C. 2901.12(H).

{¶ 19} Appellant elected to rest without presenting any witnesses or taking the stand in his own defense. Thereafter, the parties discussed the matter of jury instructions, and appellant requested additional limiting language regarding the term "attempt." Specifically, appellant requested that the jury instructions make clear that preparing, planning, or arranging the means for the commission of the crime does not constitute an

7.

attempt. After the state objected, the court denied appellant's request for additional language, finding that "the instruction already says, [']To constitute a substantial step the conduct must be strongly corroborative of the actor's criminal purpose,['] or – and then it leaves off."

{¶ 20} Thereafter, the parties provided their closing arguments and the trial court instructed the jury. Following its deliberations, the jury returned with a guilty verdict as to the three charges contained in the indictment. The matter was then continued for sentencing.

{¶ 21} At a sentencing hearing held on November 5, 2018, the state orally moved to amend the indictment to correct a clerical error with respect to Count 3, conspiracy to commit aggravated murder. In the indictment, appellant was alleged to have committed a felony of the second degree under R.C. 2923.01(J)(2). However, the state sought to correct what it characterized as a "clerical error," because the indictment should have reflected a felony of the first degree. The trial court granted the state's motion, and permitted the indictment to be amended to reflect Count 3 as a felony of the first degree. The parties then disagreed as to whether any of the offenses should merge, and the trial court concluded that merger was inapplicable. Ultimately, the trial court imposed a prison sentence of two years on the retaliation count and ten years on the other counts. The court ordered the sentences served consecutively to one another for a total prison term of 22 years.

{¶ 22} Appellant's timely appeal followed.

8.

## B. Assignments of Error

{¶ 23} On appeal, appellant assigns the following errors for our review:

Assignment of Error One: The conviction for retaliation is unsupported by sufficient evidence and is against the manifest weight of the evidence, violating Mr. Moore's right to a fair trial.

Assignment of Error Two: The trial court erred in denying Mr. Moore's motion to dismiss for lack of venue, as all elements of the offenses as alleged occurred in Marion County, thereby violating Ohio Constitution Art. 1, § 10.

Assignment of Error Three: The trial court violated Mr. Moore's right to an indictment pursuant to Ohio Const. Art. 1, § 10, when it permitted the State to amend Count 3 of the indictment from a second-degree felony to a first-degree felony at the time of sentencing.

Assignment of Error Four: The conviction for attempted aggravated murder is unsupported by sufficient evidence and is against the manifest weight of the evidence.

Assignment of Error Five: The conviction for conspiracy to commit aggravated murder is unsupported by sufficient evidence and is against the manifest weight of the evidence.

Assignment of Error Six: The convictions for attempted aggravated murder, and conspiracy to commit murder are allied offenses and the trial court committed plain error in sentencing Mr. Moore for both offenses.

Assignment of Error Seven: The conviction for retaliation is an allied offense to both or either attempted aggravated murder and conspiracy to commit murder.

Assignment of Error Eight: The trial court failed to substantially track the jury instructions as required by R.C. 2923.01(H)(2), the conspiracy statute, regarding the testimony of informants.

Assignment of Error Nine: The trial court erred in failing to give requested jury instructions as to attempted murder.

Assignment of Error Ten: The trial court violated U.S. Const. Amend. V and Ohio Const. Art. I, Sec. 10 when it sentenced appellant in retaliation for asserting his right not to testify at trial.

{¶ 24} Our resolution of appellant's first and second assignments of error, being dispositive of this appeal, renders the remaining assignments of error moot. Thus, we will not address the remaining assignments of error.

## II. Analysis

{¶ 25} In appellant's first assignment of error, he argues that the state's evidence was insufficient to support his conviction for retaliation, and that said conviction was against the manifest weight of the evidence.

10.

{¶ 26} In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 27} When reviewing a manifest weight claim, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶ 28} Here, appellant was convicted of retaliation in violation of R.C. 2921.05(B), which provides: "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges."

{¶ 29} Here, appellant was charged with retaliation because he threatened to murder Diane following his 2015 prosecution. Therefore, in order to secure a conviction for retaliation in this case, the state was required to prove that appellant (1) purposefully,

11.

(2) by unlawful threat of harm to Diane, (3) retaliated against Diane, a victim of a crime (4) because she filed or prosecuted criminal charges.

{¶ 30} Relying upon our decision in *State v. Welch*, 6th Dist. Wood No. WD-07-057, 2008-Ohio-6540, appellant contends that there is no evidence that he had any expectation that his threats toward Diane would be communicated to her. On the contrary, appellant insists that the evidence establishes that he intended to keep his murder-for-hire plot a secret.

{¶ 31} In *Welch*, we considered whether private correspondence, consisting of letters between Welch and Darrington, an inmate at the Wood County Justice Center, constituted a threat within the meaning of R.C. 2921.05. The letters were obtained by a detective who testified in prior criminal proceedings involving Welch and Darrington. *Id.* at ¶ 2-3. In screening the letters, the detective found statements made by Welch in which Welch threatened to harm another witness who testified against him in the previous action. *Id.* at ¶ 5-6. The detective then warned the witness to use caution and to contact him if he had problems. *Id.* at ¶ 10. As a result of his threatening remarks made in his letters to Darrington, Welch was charged with complicity to retaliation.

{¶ 32} Welch was ultimately tried before a jury, which found him guilty. In his subsequent appeal to this court, Welch argued that "his private correspondence to Darrington did not constitute a threat within the meaning of R.C. 2921.05, because appellant had no reason to expect that such correspondence would ever be communicated to Bannister." *Id.* at ¶ 25.

12.

{¶ 33} At the outset of our analysis in *Welch*, we articulated the legal principles that guided our analysis of Welch's argument, as follows:

> The retaliation statute does not require that any threat of harm be communicated directly to the person threatened by the person doing the threatening. * * * Rather, where the defendant was either aware that the threats would be communicated to the intended victim by the third person or could reasonably have expected the threats to be so conveyed, he is guilty of the type of unlawful threat of harm required by the retaliation statute." (Internal citations omitted.)

*Id.* at ¶ 24.

{¶ 34} Applying these principles to the record before us in *Welch*, we determined that Welch had no reason to expect Darrington to inform the witness of the threats and that he had no knowledge that the content of his private correspondence with Darrington was being read by law enforcement. *Id.* We found that Welch "had no knowledge that the content of his private correspondence with his friend was being read by law enforcement." *Id.* We further found that Welch could not be convicted of retaliation based on the statements contained in his letters to Darrington because he "could not reasonably have expected that the statements in his letters to Darrington would be communicated to Bannister." *Id.*

{¶ 35} Likewise, in the present case, appellant was unaware, and could not have reasonably expected, that Kiser would communicate his threats to Diane. Indeed, Kiser

13.

was appellant's fellow inmate and one who had never met or communicated with Diane previously. Appellant did not communicate his threats to any other inmates, and routinely emphasized the need for Kiser to remain discreet when he discussed the matter with Kiser. In fact, appellant even instructed Kiser not to reach out to him in person for payment after the murder was complete for fear that the plot would be unearthed by law enforcement. Like Welch, appellant had no knowledge that his conversations with Kiser were being recorded by law enforcement.

{¶ 36} Because the record contains no evidence to prove that appellant was aware, or could reasonably have expected, that the threats he made would be communicated to Diane by Kiser, we find that there is insufficient evidence to support appellant's retaliation conviction. Accordingly, appellant's first assignment of error is well-taken.

{¶ 37} In his second assignment of error, appellant argues that venue was improper in Erie County, and therefore the trial court erred in denying his motion to dismiss premised upon venue.

{¶ 38} We review a trial court's decision on a motion to dismiss all or any part of an indictment de novo. *State v. Mason*, 2016-Ohio-8400, 111 N.E.3d 432, ¶ 17 (6th Dist.). De novo review is independent, without deference to the lower court's decision. *State v. Hudson*, 2013-Ohio-647, 986 N.E.2d 1128, ¶ 27 (3d Dist.).

{¶ 39} In general terms, "[v]enue commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Stone*, 12th Dist. Warren No.

14.

CA2007-11-132, 2008-Ohio-5671, ¶ 16, citing *State v. Meridy*, 12th Dist. Clermont No. CA2003-11-091, 2005-Ohio-241, ¶ 12. Although venue is not a material element of the charged offense, it is a fact that the state must prove beyond a reasonable doubt unless it is waived by a criminal defendant. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 22; *see also* Ohio Constitution, Article 1, Section 10 and R.C. 2901.12(A). "Whether the state properly established venue turns on whether the defendant has a 'significant nexus' with the county where the trial was held." *State v. Potee*, 2017-Ohio-2926, 90 N.E.3d 58, ¶ 22 (12th Dist.), citing *Stone* at ¶ 16. "Venue need not be proven in express terms; it may be established either directly or indirectly by all the facts and circumstances of the case." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 144.

{¶ 40} "Because venue is neither a jurisdictional nor a material element of a criminal offense, the indictment is only required to contain an allegation that the offense was committed within the jurisdiction of the court." *State v. Armengau*, 2017-Ohio-4452, 93 N.E.3d 284, ¶ 107 (10th Dist.), citing *State v. Andrews*, 148 Ohio App.3d 92, 95, 772 N.E.2d 167 (10th Dist.2002).

{¶ 41} Here, the indictment alleges that appellant committed the retaliation offense "on or about 4/21/2017 through 7/6/2017, *at Erie County, Ohio * * *.*" (Emphasis added). Additionally, the indictment alleges that appellant committed the offenses of attempted aggravated murder and conspiracy in Marion County.

{¶ 42} Under Ohio's venue statute, R.C. 2901.12, venue generally lies in the territory in which the offense is committed. R.C. 2901.12(A). However, venue is also proper in other territories, under special circumstances. Relevant here, R.C. 2901.12 provides, in pertinent part:

> (D) When the offense is conspiracy, attempt, or complicity cognizable under division (A)(2) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of its elements occurred. If an offense resulted outside this state from the conspiracy, attempt, or complicity, that resulting offense also may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of the elements of the conspiracy, attempt, or complicity occurred.
>
> * * *
>
> (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
>
> (1) The offenses involved the same victim, or victims of the same type or from the same group.

16.

(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4) The offenses were committed in furtherance of the same conspiracy.

(5) The offenses involved the same or a similar modus operandi.

(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

{¶ 43} "R.C. 2901.12(G) and (H) are statutory reflections of the modern mobility of criminals to perform unlawful deeds over vast geographical boundaries." *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). Consistent with this multi-county venue, "a grand jury of one county has authority to indict on offenses occurring in other counties provided that those offenses are part of a course of criminal conduct." *State v. Ahmed*, 8th Dist. Cuyahoga No. 84220, 2005-Ohio-2999, ¶ 11.

{¶ 44} "[B]ecause venue is a fact that must be proven beyond a reasonable doubt by the State, a pretrial motion challenging venue is not appropriate. A defendant may only challenge venue prior to trial if it equates to an actual defect in the indictment, for example, if the indictment fails to allege venue." *State v. Reed*, 9th Dist. Medina No. 07CA0026-M, 2008-Ohio-1880, ¶ 14. "If the indictment is not defective for failure to allege venue, 'a defendant may only raise the issue of improper venue at trial via a

Crim.R. 29 motion for acquittal, and may later appeal that decision, like any jury determination of fact, based on either the sufficiency of the evidence or manifest weight.'" *State v. Young*, 2017-Ohio-1400, 89 N.E.3d 175, ¶ 13 (9th Dist.), quoting *State v. Simpson*, 9th Dist. Summit No. 21475, 2004-Ohio-602, ¶ 74.

{¶ 45} As noted above, the indictment filed in this case alleges that one of the offenses, retaliation, was committed by appellant in Erie County. Thus, the indictment was not defective for failure to allege venue in Erie County, and the trial court did not err in denying appellant's pretrial motion to dismiss on the basis of venue. Consequently, we find no merit to appellant's argument regarding the trial court's disposition of the pretrial motion to dismiss.

{¶ 46} At trial, appellant further argued that the state's evidence as to venue was insufficient to support a conviction for the offenses contained in the indictment in support of his Crim.R. 29 motion for acquittal. Further, appellant raised the issue of sufficiency of the evidence with respect to the retaliation claim in his first assignment of error, albeit not directly related to the venue question, which we resolved in his favor. Therefore, although we have rejected appellant's contention that the trial court erred in denying his pretrial motion to dismiss the indictment, we will nonetheless proceed to examine the sufficiency of the evidence introduced by the state at trial to establish venue in Erie County.

{¶ 47} In his brief, appellant contends that all of the events that gave rise to the charges contained in the indictment occurred in Marion County, where appellant was

18.

incarcerated. Based upon this assertion, appellant argues that the state has not established that venue is proper in Erie County under R.C. 2901.12(A), (D), or (H), all of which require at least one of the elements of one of the offenses to have occurred in the county in which the action is brought.

{¶ 48} In response, the state asserts that the retaliation charge in this case is related to appellant's prosecution for kidnapping Diane in Erie County in 2015. Therefore, the state urges that Erie County is the appropriate venue to try appellant for retaliation. Moreover, the state argues that the offenses contained in the indictment were part of a course of conduct such that they all may be tried in Erie County under R.C. 2901.12(H).

{¶ 49} Given that the state acknowledges that the offenses of attempted aggravated murder and conspiracy were committed in Marion County, the threshold issue we must resolve in this case regarding venue is whether appellant committed any of the elements of retaliation in Erie County.

{¶ 50} Here, the state's evidence established that appellant threatened to murder Diane during his conversations with Kiser, while he was confined in the Marion Correctional Institution in Marion County. Indeed, the state cannot dispute the fact that appellant was in prison in Marion County during the time period set forth in the indictment (April 2017 through July 2017).

{¶ 51} Notwithstanding the fact that appellant was in Marion County when he made the murder threats, the state insists that venue in Erie County was proper because "[p]roof of the [2015] criminal case against the Appellant in Erie County was * * * an

19.

essential element of his prosecution for retaliation." In so arguing, the state mischaracterizes the elements of retaliation as set forth in R.C. 2921.05(B).

{¶ 52} While it is true that the language of R.C. 2921.05(B) requires the state to establish that appellant's threats were made in response to Diane filing or prosecuting criminal charges, there is nothing in the statute that requires the state to prove the *location* of the filing or prosecution of those charges as an element of the offense of retaliation. It is well established that because "there are no common-law crimes in Ohio, we must look to the statute to determine the elements of the offense." *State v. Akins*, 109 Ohio App. 302, 303, 165 N.E.2d 10 (2d Dist.1959). The state's articulation of the elements of retaliation goes beyond the language set forth in R.C. 2921.05(B), and is therefore erroneous.

{¶ 53} Under the state's theory of venue, venue would be appropriate in Erie County under the following hypothetical scenario. While both the defendant and victim were living in Erie County, Ohio, the victim filed charges against the defendant for felonious assault. Defendant is subsequently found guilty and sentenced to prison in Ohio for three years. In the meantime, the victim moves to Ann Arbor, Michigan. The defendant is later released from prison and also moves to Ann Arbor. The defendant then retaliates against the victim in Michigan, but because the prior prosecution took place in Erie County, the defendant is brought to trial again in Erie County notwithstanding the fact that both he and the victim are now Michigan residents, a result that is divorced from the language of R.C. 2901.12.

20.

{¶ 54} Further, the state contends that appellant's threats "would have resulted in the death of the victim in Erie County, where she lived at all relevant times." However, the location in which appellant secretly planned to carry out his threat is not an element of the offense of retaliation and thus was immaterial to the state's retaliation charge in this case.

{¶ 55} In light of the evidence introduced by the state at trial, we find that the conduct giving rise to the charge of retaliation was committed in its entirety while appellant was confined in Marion County. Moreover, the remaining charges in the indictment (attempted aggravated murder and conspiracy) likewise took place entirely in Marion County. Because none of the elements of any of the charged offenses occurred in Erie County, as required to establish venue under the relevant provisions of R.C. 2901.12, the state has failed to establish venue beyond a reasonable doubt in this case. Accordingly, appellant's second assignment of error is well-taken.

{¶ 56} "It is mandatory that venue be proven beyond a reasonable doubt before a conviction can be sustained." *State v. Gonzalez*, 188 Ohio App.3d 121, 2010-Ohio-982, 934 N.E.2d 948, ¶ 9 (3d Dist.), citing *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907). Moreover, "[a] judgment of acquittal may be entered when the state has failed at trial to prove the venue of the offense as alleged in the indictment." *State v. Hampton*, 134 Ohio St.3d 447, 452, 2012-Ohio-5688, 983 N.E.2d 324. Having found that the state failed to establish venue in this case, appellant's convictions must be vacated. *State v. Yavorcik*, 2018-Ohio-1824, 113 N.E.3d 100, ¶ 107.

21.

**{¶ 57}** We acknowledge the harsh result of this decision, especially in light of the serious nature of appellant's threats toward Diane. Were this case to have been tried in Marion County, where venue was appropriate, appellant's convictions for attempted aggravated murder and conspiracy may have been upheld by the appellate court sitting in that jurisdiction. However, as it stands, the state elected to try appellant in Erie County on all of the charges. Because venue was improper in Erie County, all of appellant's convictions must be vacated.

**{¶ 58}** Since our determination that the state's evidence was insufficient as to venue demands the vacation of appellant's convictions, appellant's remaining assignments of error are moot. App.R. 12(A).

### III. Conclusion

**{¶ 59}** In light of the foregoing, the judgment of the Erie County Court of Common Pleas is reversed, and appellant's convictions are vacated. The costs of this appeal are assessed to the state under App.R. 24.

Judgment reversed
and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

Arlene Singer, J. _____

_____
JUDGE

_____
JUDGE

Christine E. Mayle, J. _____
CONCUR.

_____
JUDGE

> This decision is subject to further editing by the Supreme Court of
> Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
> version are advised to visit the Ohio Supreme Court's web site at:
> http://www.supremecourt.ohio.gov/ROD/docs/.