OPINION
{¶ 1} Defendant-appellant, Kelly Hammons, appeals her conviction in the Mason Municipal Court for driving under the influence of alcohol ("DUI"). We affirm appellant's conviction.
 {¶ 2} Appellant was charged with DUI in October 2003 after she failed three field sobriety tests. She moved to suppress the results of the field sobriety tests on the ground that since the arresting officer was not the one who conducted the tests, he had no probable cause to arrest her for DUI. During a hearing on the motion, Officer Adrian Jilotti, the arresting officer, testified about his observations regarding appellant's driving, her demeanor after she was pulled over, and her performance during the tests. The police officer who conducted the tests, Officer Scott Burdick, then testified as to the results of the field sobriety tests. After hearing the officers' testimony, the trial court denied appellant's motion to suppress. On January 15, 2004, a jury found appellant guilty of DUI. Appellant filed this appeal, raising four assignments of error.
 {¶ 3} In her first assignment of error, appellant argues the trial court erred by denying her motion to suppress. Appellant contends the field sobriety tests were not admissible because they were not conducted by the arresting officer.
 {¶ 4} When ruling on a motion to suppress, the trial court serves as the trier of facts and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19, 20. An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 5} It is well-established that even when nonscientific standardized field sobriety tests are inadmissible, a law enforcement officer may nevertheless testify as a lay witness regarding observations he made during a defendant's performance of those tests. State v. Schmitt,101 Ohio St.3d 79, 2004-Ohio-37, syllabus; State v. Kirby, Butler App. No. CA2002-06-136, 2003-Ohio-2922. At the suppression hearing, Officer Jilotti explained he did not conduct the field sobriety tests because he did not feel competent to conduct them as he had not "done it for a couple of years." Then, testifying as to appellant's performance on the tests, the officer stated that appellant was unsteady during the walk and turn test, had difficulty with the one leg stand test, and was swaying during the instructions. These observations were within the province of ordinary persons testifying as lay witnesses and were therefore admissible evidence regarding whether appellant appeared intoxicated.Kirby at ¶ 17.
 {¶ 6} Furthermore, even without considering the field sobriety tests, Officer Jilotti had sufficient probable cause to arrest appellant for DUI. See State v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212. At the suppression hearing, the officer testified he observed appellant weaving "like a ship on the ocean" for approximately three city blocks, driving on the "white dotted line" at times, and almost hitting a median. Although being followed by three police cruisers with their overhead lights on, appellant did not pull over until after Officer Jilotti used his air horn. While speaking to appellant, the officer noticed a smell of alcohol and that her actions were slow and deliberate. Appellant admitted consuming alcoholic beverages. These facts are more than sufficient to establish probable cause to arrest appellant for DUI. The trial court, therefore, did not err by denying appellant's motion to suppress. Appellant's first assignment of error is overruled.
 {¶ 7} In her second assignment of error, appellant argues the trial court erred by allowing into evidence testimony from Officers Jilotti and Burdick that appellant was arrested for DUI on a prior occasion during which she vomited. In her third assignment of error, appellant argues the trial court erred by allowing into evidence the testimony of her supervisor, Mark Ancona, that he had seen appellant drunk before. The state counters that defense counsel opened the door to the admission of evidence during his questioning of the officers and Ancona.
 {¶ 8} The admission and exclusion of evidence are within the broad discretion of the trial court. State v. Mays (1996), 108 Ohio App.3d 598,617. An abuse of discretion is more than an error of law or judgment; it implies an attitude that is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 156.
 {¶ 9} In general, the existence of a prior offense is inflammatory and should not be revealed to the jury unless specifically permitted under statute or rule. State v. Allen (1987), 29 Ohio St.3d 53, 55. Evidence of a defendant's prior bad acts is inadmissible to show that the defendant has a propensity or inclination to commit the offense in question. Evid.R. 404(B). However, where evidence of a defendant's prior bad acts is first introduced or brought out by the defense, objection to such evidence is waived and there is no reversible error. State v. Hartford
(1984), 21 Ohio App.3d 29, 30-31.
 {¶ 10} We first start with the testimony of appellant's supervisor and defense witness, Mark Ancona. On direct examination, defense counsel asked Ancona whether he had "some experience in the past with people that are impaired that drank alcohol." Ancona replied he had. Ancona then testified that when he picked up appellant at the police station, she did not exhibit any intoxication symptoms, such as the ones he had seen in the past in impaired people. Specifically, appellant's speech was not slurred, her eyes were not bloodshot, and she was not unsteady or staggering. Asked whether he was "positive * * * that [appellant] was not impaired when [he] picked her up," Ancona replied that appellant "was not impaired when [he] picked her up and that is the truth."
 {¶ 11} On cross-examination, the prosecutor asked Ancona whether he had seen appellant intoxicated before, what was appellant's demeanor when she was intoxicated, and how he would define an impaired person. Defense counsel's objections were overruled on the ground that he had inquired about those matters on direct examination.
 {¶ 12} We find that defense counsel opened the door to Ancona's testimony he had seen appellant drunk before when he asked Ancona on direct examination about his experience with impaired people and whether appellant was drunk when he picked her up. Once the door is opened, it is not error for the other acts to be admitted. "The State did no more than walk through a door opened by the appellant." State v. Waver (Aug. 19, 1999), Cuyahoga App. No. 73976, 1999 WL 632902, at *8. Accordingly, any objection to such evidence was waived, and the trial court did not err by allowing such testimony. Hartford, 21 Ohio App.3d at 30-31. Appellant's third assignment of error is overruled.
 {¶ 13} Appellant also objects to the testimony from Officers Jilotti and Burdick that she was arrested for DUI on a prior occasion during which she vomited. During cross-examination, defense counsel asked Officer Jilotti the following questions:
 {¶ 14} "Q. [A]t the time that you called Officer Burdick to do the field sobriety tests, * * * had you had any knowledge that Officer Burdick had had any type of prior relationship with [appellant]?
 {¶ 15} "A. "No, sir.
 {¶ 16} "Q. Did he share with you that he had actually changed a tire for her some months earlier and had asked her out on a date?
 {¶ 17} "A. No, not prior.
 {¶ 18} "Q. Did [appellant] in your trip back to the station inform you that, in her words, Officer Burdick had hit on her and asked her for a date?
 {¶ 19} "A. Yes, sir.
 {¶ 20} "Q. Did you ever follow up to figure out whether that was true or not?
 {¶ 21} "A. Officer Burdick stated to me that he had changed a tire that one time for her, he also was present during a DUI stop that she was on, that she was arrested for ____."
 {¶ 22} Subsequently, during cross-examination of Officer Burdick, defense counsel asked the officer if he "had a contact with [appellant] involving a prior allegation of DUI?" The officer replied he had. Prompted by defense counsel, the officer also testified he had had one other contact with appellant when he changed her tire. Later on during cross-examination, defense counsel asked the officer: "[b]efore you gave the sobriety test, did you tell Officer Jilotti, you know, I've had a prior contact with [appellant] where I was involved in changing her tire?" The officer replied: "[n]o, not at all, it was irrelevant, I did call him on the radio when * * * the license plate came back to the registered owner and her address, that Officer Walker and I had arrested her for DUI prior where she had vomited all over the outside of her car, that was the last time that I spoke with him about my prior contact with her."
 {¶ 23} While we agree that defense counsel elicited Officer Burdick's testimony regarding appellant's prior DUI incident, we do not agree with the state's argument that defense counsel opened the door to this evidence when he first questioned Officer Jilotti on cross-examination "in an attempt to establish some sort of bias of the officers toward [appellant]" for rejecting Officer Burdick's alleged date proposal. Officer Jilotti was specifically asked whether he had followed up on appellant's allegation Officer Burdick had asked her on a date. Officer Jilotti did not reply to the question, but instead referred to appellant's prior DUI incident during which Officer Burdick was present. This was the very first time appellant's prior DUI incident was mentioned during her DUI trial. Officer Jilotti's improper reference to appellant's prior DUI incident was not prompted by defense counsel's questioning of the officer.
 {¶ 24} The question then becomes whether the erroneous revelation of appellant's prior DUI incident warrants a reversal of her DUI conviction. See State v. Brletich (June 28, 2000), Columbiana App. No. 98 CO 84. Upon thoroughly reviewing the record, we find that there is strong sufficient independent evidence that, if believed by the jury, supports appellant's DUI conviction.
 {¶ 25} At trial, Officer Jilotti testified he observed appellant weaving within her lane "much like a ship would move on the sea," driving on the yellow line or the white line at times, and almost striking an island at an intersection. The officer testified appellant's weaving was frequent and that he stopped counting after 12. Although being followed by three police cruisers with their overhead lights on, appellant did not pull over until after Officer Jilotti used his air horn. While speaking to appellant, the officer noticed a smell of alcohol and that her speech was slow and deliberate. Appellant admitted consuming alcoholic beverages.
 {¶ 26} Officer Burdick testified that appellant failed three field sobriety tests. While speaking to appellant, the officer noticed a strong odor of alcoholic beverage coming from her mouth, that her speech was slurred, and that her eyes were slightly bloodshot and glassy. Appellant admitted consuming alcoholic beverages. Officer Burdick also testified that appellant "seemed upset and asked if there was any way that she could just go home or get out of this."
 {¶ 27} Appellant testified that while she had wine with dinner that evening, she stopped drinking a few hours before she was pulled over. Appellant denied she was intoxicated that evening and argued instead that she was affected by fatigue and the late hour. She testified she did not feel she was weaving. She also did not know why she failed the horizontal gaze nystagmus test and the walk and turn test. Appellant surmised she had a strong odor of alcohol when she was pulled over "[p]robably because I was around alcohol, I don't know."
 {¶ 28} In light of the foregoing, we find that there was strong sufficient independent evidence of appellant's guilt which rendered the revelation of her prior DUI incident nonprejudicial. See Brletich.
Appellant's second assignment of error is overruled.
 {¶ 29} In her fourth assignment of error, appellant argues the trial court erred by declining to give a limiting instruction to the jury regarding her previous DUI incident and the fact she was drunk on a prior occasion. Relying upon Evid.R. 105, appellant had orally asked the trial court to instruct the jury that "you [are] not to consider [the foregoing] references in deciding whether or not Ms. Hammons was legally impaired on this occasion."
 {¶ 30} Evid.R. 105 provides that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request of a party, shall restrict the evidence to its proper scope and instruct the jury accordingly." Under Evid.R. 105, a party is entitled to a limiting instruction whenever evidence might be misapplied by the jury in reaching its verdict. State v. Valentine (June 19, 1992), Montgomery App. No. 13192, 1992 WL 137101, at *4. Evid.R. 105 imposes a mandatory duty upon the court to issue the instruction when requested. Id., citing to Weissenberger, Ohio Evidence (2005), 36, Section 105.2.
 {¶ 31} It follows, then, that the trial court erred when it declined to give the requested limiting instruction. However, in light of the strong evidence of appellant's guilt, we find that the trial court's failure to give the requested instruction does not warrant a reversal of appellant's conviction. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 32} Judgment affirmed.
Powell and Valen, JJ., concur.