[Cite as *State v. Potee*, 2017-Ohio-2926.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2016-06-045 |
| | : | O P I N I O N |
| - vs - | | 5/22/2017 |
| | : | |
| MICHAEL C. POTEE, JR., | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2015-CR-00515

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Joshua R. Crousey, One East Main Street, Amelia, Ohio 45102, for defendant-appellant

**RINGLAND, J.**

{¶ 1}   Defendant-appellant, Michael C. Potee, appeals his convictions for one count of involuntary manslaughter, two counts of corrupting another with drugs, one count of trafficking in heroin, and one count of aggravated trafficking in fentanyl from the Clermont County Court of Common Pleas.

{¶ 2}   On September 22, 2015, the Clermont County Grand jury returned a five-count indictment for the above offenses.  Prior to trial, the state amended the indictment and bill of

particulars to permit the jury to find appellant guilty of complicity to commit any of the five offenses. The trial court allowed such amendment over appellant's objection. The trial revealed the following facts.

{¶ 3} Rachel Joslin testified on the behalf of the state that on May 20, 2015, following a trip to the hospital, her husband, Jeremy Adkins, suggested the couple purchase $20 of heroin from appellant. The couple returned to their apartment in Clermont County, where Adkins called appellant sometime before noon to plan the purchase. Shortly after the telephone call with appellant, the two proceeded to drive to appellant's workplace in Hamilton County.

{¶ 4} Appellant testified Adkins did contact him several times throughout the day because "he [needed] to get some heroin." Appellant "was actually waiting to buy some heroin [himself]" and "had contacted [his] drug dealer[,]" so appellant "relayed that [information] to [Adkins]." From this conversation, Adkins decided to drive to appellant's work to obtain the heroin. Appellant provided Adkins directions and helped facilitate a heroin transaction between appellant's drug dealer and Adkins. Appellant testified Adkins would not likely have obtained heroin from appellant's dealer without his assistance.

{¶ 5} Joslin's testimony conflicted with appellant's testimony regarding from whom the couple purchased the heroin. Joslin testified the couple pulled into the lot at the address provided by appellant next to a white work van. Appellant approached the couple's vehicle and conversed for a few minutes before exchanging a single bindle of heroin for $20. The couple proceeded to drive back to their apartment in Clermont County without making any stops. At 12:13 p.m., appellant sent a text message to Adkins' phone, stating "[l]et me know how you like that." Adkins responded two minutes later, stating "I will as soon as [I] get home in about 20 min[utes. Thanks.]" Appellant testified his last phone conversation with Adkins occurred when Adkins returned to his apartment in Clermont County and, at the time,

appellant assumed Adkins was high on the drugs purchased from appellant's dealer.

{¶ 6} Joslin testified that once the couple returned to their apartment, they split the heroin equally. Joslin described the color of the heroin as appearing to be a mixture of cream and white. On behalf of the state, Detective Ken Mullis of the Union Township Police Department testified that it is common for drug dealers to use a cutting agent to increase profits. With respect to heroin, fentanyl has become a common cutting agent and results in the substance appearing "between off-white and stony gray." Joslin further testified that the couple snorted the heroin and that they quickly felt the effects of the drugs. Adkins went to the bathroom and Joslin headed towards the front door to walk the family dog when she lost consciousness.

{¶ 7} Appellant called Adkins at 3:39 p.m., and when he did not pick up, appellant sent him a text message, stating "[y]ou alive". Appellant testified he commonly uses the phrase and, to support this contention, the trial court admitted evidence of another text message asking one of appellant's friends if he was alive. Before 4:00 p.m., Adkins and Joslin's then 17-year-old son, Cain, returned home from high school. Cain testified that he had difficulty entering the apartment because Joslin's unconscious body blocked the front door. Cain observed Joslin struggling to breathe and making "gargling" sounds. Cain attempted to locate a phone and found his deceased father in the bathroom. Cain described Adkins as unconscious, not breathing, and extremely blue in the face. Cain retrieved Adkins' phone from the bathroom and called the police.

{¶ 8} An emergency medical technician ("EMT") and a Union Township Police detective responded to Cain's emergency call. The EMT found Joslin breathing, but unconscious and unresponsive. The EMT determined Joslin was at risk of dying; therefore, he administered a dose of Narcan and revived her. The single dose did not bring Joslin to full consciousness; therefore, the EMT administered a second dose. While the EMT treated

Joslin, the police detective located Adkins, deceased in the bathroom. A search of the residence produced one bindle that appeared to be heroin-related in the couple's bedroom. An ambulance transported Joslin to a nearby hospital. During the ambulance ride, Joslin disclosed she used heroin obtained from an acquaintance of her husband, whose number the police could find in her husband's phone.

{¶ 9} The lead investigator, Detective Joshua Bail of the Miami Township Police Department, testified on behalf of the state that he conducted a series of interviews with Joslin. The first interview occurred at the hospital. Detective Bail testified Joslin disclosed to him that her husband purchased $20 of powder heroin from a man named Chris in a church parking lot in Hamilton County. Joslin stated she and her husband had been sober for years before making this purchase. She described the dealer as a white male in his thirties with tattoos on both arms who had a twin brother and lived in the Lakeshore Mobile Home Park in Goshen. She further disclosed this man drove a white work van. Detective Bail conducted a second interview with Joslin the next day where Joslin informed Detective Bail she had accidentally provided the wrong name for the heroin dealer. Joslin testified she was not altogether at the hospital and that she corrected herself during the second interview by providing Nick, Nicky, or Mickey as the name of the person who sold her husband heroin. Joslin further testified she had never met the dealer before the transaction, but knew of him as her husband's acquaintance. Detective Bail testified that another detective independent of this case administered a photo lineup where Joslin picked appellant with 95% confidence. During trial, Joslin identified appellant as the man who sold her husband heroin on the day in question.

{¶ 10} From this information, Detective Bail obtained a search warrant for appellant's mobile home. Execution of the warrant on May 21, 2015 resulted in extensive drug paraphernalia including a great deal of uncapped needles, bottoms of aluminum cans, and

plastic wrappings suggestive of drug activity. While at the mobile home, police called the number listed as "Nick Potee" in Adkins' phone and a mobile phone rang inside appellant's room. Police also located a white work van outside the mobile home. Detective Bail placed appellant under arrest at his residence and later that day conducted an interview. The state played a recording of this short interview at trial. During the interview, appellant informed the police that he temporarily resided at the mobile home, he owned the phone recovered from the residence, and that he is the only one who uses the phone.

{¶ 11} On cross-examination of Detective Bail and Detective Mullis, defense counsel inquired whether the outcome of the search of appellant's mobile home was consistent with drug usage, as opposed to drug trafficking. Likewise, defense counsel made the same inquiry of the information obtained from appellant's phone. Due to this inquiry, the trial court later permitted questioning by the state during cross-examination of appellant regarding appellant's possession of $900 a few days prior to the date in question. In so doing, the trial court denied defense counsel's motion for mistrial based on admitting impermissible character evidence.

{¶ 12} The Hamilton County Coroner's Office conducted an autopsy of Adkins' body. Hamilton County Chief Deputy Coroner, Dr. Karen Looman, testified the autopsy revealed Adkins died from acute combined heroin and fentanyl poisoning. She further stated overdosing on a mixture of heroin and fentanyl creates a substantial likelihood of death and that no other cause contributed to Adkins' death. Dr. Looman testified someone using heroin and fentanyl following an extended period of sobriety could experience a more dramatic effect. Dr. Looman explained she was not personally aware of someone overdosing on fentanyl and not dying.

{¶ 13} After both parties rested, the trial court supplied the jury with jury instructions, including instructions regarding venue and complicity over appellant's objections. Following

deliberations, the jury returned a verdict of guilty on each offense in the amended indictment. The trial court merged the two trafficking convictions and merged one of the corrupting another with drugs convictions with the involuntary manslaughter conviction. The trial court sentenced appellant to a prison term of fifteen and one-half years. Appellant now appeals from his convictions, raising four assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED BY NOT DISMISSING WHERE THERE WAS NO EVIDENCE OF ANY ACT COMMITTED BY APPELLANT IN CLERMONT COUNTY.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE FINDING OF GUILTY WAS NOT SUPPORTED BY THE RECORD.

{¶ 18} Appellant presents two issues for review under his first assignment of error. First, appellant contends the state failed to produce sufficient evidence to establish Clermont County as the proper venue for the counts alleged in the indictment, and therefore, the trial court erred by denying his Crim.R. 29 motion for acquittal. Second, appellant contends the trial court abused its discretion by providing the jury an instruction regarding venue for multiple jurisdictions pursuant to R.C. 2901.12(H)(3). In his second assignment of error, appellant contends his convictions were against the manifest weight of the evidence creating a miscarriage of justice.

{¶ 19} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 102 (1997). Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. *Id.*, citing *Black's Law Dictionary* (6th Ed.1990) 1433. A conviction based on legally insufficient evidence constitutes a denial of

due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 259-60 (1991), *superseded by constitutional amendment on other grounds as stated by Smith* at 102. In evaluating the sufficiency of the evidence, this court "defer[s] to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

{¶ 20} In contrast to a sufficiency of the evidence challenge, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In making this determination, a reviewing court looks at the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. "An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Couch*, 12th Dist. Butler No. CA2016-03-062, 2016-Ohio-8452, ¶ 8.

{¶ 21} "A reversal based on the weight of the evidence * * * can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the

jury to convict." *Tibbs* at 42-43; *see also State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19 (stating that finding a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency). Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 22} "Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Stone*, 12th Dist. Warren No. CA2007-11-132, 2008-Ohio-5671, ¶ 16, citing *State v. Meridy*, 12th Dist. Clermont No. CA2003-11-091, 2005-Ohio-241, ¶ 12. "The importance of venue is to give the defendant the right to be tried in the vicinity of his alleged criminal activity." *Stone* at ¶ 16, citing *Meridy* at ¶ 12. Whether the state properly established venue turns on whether the defendant has a "significant nexus" with the county where the trial was held. *Id.* As a result, and pursuant to R.C. 2901.12(A), "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C. 2901.12 embodies the constitutional protections provided by the Ohio Constitution's guarantee to its citizens to "a speedy trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." *State v. Castor*, 5th Dist. Delaware No. 14 CAA 01 0004, 2014-Ohio-5236, ¶ 16, quoting Article I, Section 10, Ohio Constitution.

{¶ 23} Although not a material element of the offense charged, the state must prove beyond a reasonable doubt the defendant committed the crime charged in the county that both returned the indictment and held the trial. *Stone* at ¶ 17, citing *Meridy* at ¶ 12. Pursuant to R.C. 2901.12(H)(3), if a defendant commits offenses in different jurisdictions as part of a course of criminal conduct, proper venue lies for all offenses in any jurisdiction in which the

- 8 -

defendant committed one of the offenses or any element thereof. Offenses "committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective" serve as "prima-facie evidence of a course of criminal conduct." R.C. 2901.12(H)(3).

{¶ 24} After a thorough review of the record, we find the facts and circumstances in evidence are sufficient to demonstrate the state properly established venue in both Clermont and Hamilton Counties. The jury convicted appellant of one count of involuntary manslaughter, two counts of corrupting another with drugs, one count of trafficking in heroin, and one count of aggravated trafficking in fentanyl. The involuntary manslaughter statute provides "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). With respect to the corrupting another with drugs charges, "[n]o person shall knowingly * * * [b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person * * *." R.C. 2925.02(A)(3). In regards to the trafficking offenses, R.C. 2925.03(A)(1) provides "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance * * *." Pursuant to R.C. 3719.41, heroin and fentanyl are Schedule I and Schedule II narcotics, respectively.

{¶ 25} Appellant contends an important distinction exists for establishing venue based on whether a defendant committed an offense in a certain county or whether the offense just occurred in that county. In support of this proposition, appellant cites a Sixth District opinion addressing facts involving a drug trafficking chain of events where the state charged the defendant with complicity to trafficking drugs. *See State v. Bovee*, 6th Dist. Huron No. H-02-032, 2003-Ohio-2788, ¶ 19-21. Contrary to appellant's claim otherwise, *Bovee* is easily distinguishable from the facts at hand because it dealt with an exchange with a drug dealer located in a different county than the charging county where the drug dealer had no contact

with the purchaser before the exchange. *Id.* at ¶ 2-5. Rather, a third party drove with an informant to the defendant's county where the transaction occurred. *Id.* at ¶ 4. The Sixth District found that while the defendant was complicit in facilitating the drug transaction, this facilitation occurred entirely in a different county than the charging county; therefore, the state failed to establish proper venue in the charging county. *Id.* at ¶ 29. Unlike *Bovee* and as analyzed below, the drug transaction between appellant and Adkins began in both Hamilton and Clermont Counties.

{¶ 26} Appellant further contends two of this court's opinions provide additional support for his interpretation of establishing venue. *See State v. Sparks*, 12th Dist. Warren Nos. CA2013-02-010 and CA2013-02-015, 2014-Ohio-1130, ¶ 16; *State v. Baker*, 12th Dist. Warren No. CA2012-12-127, 2013-Ohio-2398, ¶ 39. However, our decisions in *Baker* and *Sparks* involve defendants convicted of engaging in a pattern of corrupt activity and whether the pattern extended to multiple counties. Whereas, the convictions in this case involve a single drug transaction carried out in two counties that resulted in Joslin's overdose and Adkins' death. As demonstrated below, each of appellant's convictions are supported by sufficient evidence and not against the manifest weight of the evidence, and there exists sufficient evidence that appellant committed at least one element of each offense in Clermont County.

{¶ 27} Although the physical exchange portion of the drug transaction was carried out in Hamilton County, a sufficient nexus existed for Clermont County. Joslin testified appellant and Adkins arranged the transaction over the phone and that Adkins carried out this conversation from the couple's apartment in Clermont County. *See, e.g.*, *State v. Behanan*, 12th Dist. Butler No. CA2009-10-266, 2010-Ohio-4403, ¶ 20 (finding sufficient nexus for proper venue in county where drug user arranged transaction over phone); *State v. Meridy*, 12th Dist. Clermont No. CA2003-11-091, 2005-Ohio-241, ¶ 23 (finding state properly

- 10 -

established venue in county where transaction planned and agreed to over the phone). Joslin's testimony regarding her and Adkins' strategy to buy drugs from appellant, including the amount and cost of the drugs, coupled with Adkins' and appellant's call logs admitted into evidence together demonstrate the planning portion of the transaction occurred in both Clermont and Hamilton Counties. Joslin testified that upon completion of this stage of the transaction, she and Adkins drove to Hamilton County where the physical act of exchanging $20 for the drugs occurred. Then, the couple drove back to their apartment in Clermont County where they snorted the drugs, resulting in Joslin's overdose and Adkins' death.

{¶ 28} This evidence presented by the state alone meets the necessary requirements to establish proper venue for the offenses charged in Clermont County. There is prima facie evidence of a course of criminal conduct, as the planning stage of the transaction is interrelated to the carrying out of the transaction, and ultimately, the couple's use of the drugs acquired therefrom. This chain of events began with the planning stage in both Hamilton and Clermont Counties with the purpose or objective of using heroin, and such objective remained throughout the remainder of the chain until the couple's completion of the original objective upon snorting the drugs. Therefore, pursuant to R.C. 2901.12(H)(3), the state established sufficient evidence of proper venue for the charged offenses in Clermont County.

{¶ 29} Appellant further asserts error with respect to the trial court's jury instructions regarding venue. Appellant concedes the trial court's jury instruction regarding venue "applies * * * to situations where an offender 'commits offenses in different jurisdictions.'" In so doing, appellant argues the trial court erred by providing an instruction consistent with R.C. 2901.12(H)(3) because appellant did not commit an element of any of the charged offenses in Clermont County. However, since we resolved appellant's contention above with respect to our venue analysis, his argument is now moot.

{¶ 30} Next, we turn to appellant's argument his convictions are against the manifest

- 11 -

weight of the evidence. In so doing, appellant repeats his venue argument as well as contends the evidence presented does not support a finding appellant was responsible for Adkins' death and Joslin's overdose. Appellant argues the state based its case on a single transaction of heroin between himself and Adkins, and that the state failed to prove why the drugs exchanged in this transaction resulted in Adkins' death, but only a mere overdose for Joslin. After a thorough review of the record, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring reversal of appellant's convictions. With respect to the trafficking offenses, evidence was presented demonstrating appellant knowingly sold or offered to sell the controlled substances of heroin and fentanyl to Adkins. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The analysis does not contemplate whether appellant knew the type and amount of the substance. *See State v. Doliboa*, 12th Dist. Warren No. CA2007-07-088, 2008-Ohio-5297, ¶ 39-42.

{¶ 31} Joslin's testimony regarding each stage of the transaction coupled with text messages and call logs between Adkins and appellant on the day of the transaction provided evidence for the jury to conclude appellant was aware his conduct would probably result in the sale of heroin or fentanyl. Moreover, Joslin's extensive description of appellant on the day of the transaction identified appellant as the drug dealer. Joslin described appellant as a white male in his thirties with tattoos on both arms, who drove a white work van, had a twin brother, and lived in the Lakeshore Mobile Home Park in Goshen. Additionally, Joslin identified appellant as the dealer during a police lineup with 95 percent confidence, and again, identified appellant at trial. Joslin testified regarding each stage of the transaction, including the hand-to-hand transaction of one bindle of heroin in exchange for $20. The state presented evidence that police recovered a single bindle of heroin from the couple's

apartment. At the apartment, police and an EMT observed Joslin unconscious and the EMT revived her by administering Narcan – a procedure consistent with opiate overdose. Moreover, the autopsy report identified heroin and fentanyl in Adkins' postmortem blood samples. Joslin testified the couple ingested the same drugs.

{¶ 32} With regard to the involuntary manslaughter offense, evidence was presented demonstrating appellant caused Adkins' death as a proximate result of the drug transaction. As explained above, the state presented evidence for the jury to reasonably conclude appellant committed a felony by selling heroin and fentanyl to Adkins. Additionally, "[t]he criminal intent of involuntary manslaughter is supplied by the criminal intent to do the underlying unlawful act of which the homicide is a consequence." *State v. Martin*, 12th Dist. Brown No. CA2003-09-011, 2004-Ohio-4309, ¶ 22. Therefore, since we previously determined evidence was presented for the jury to reasonably conclude appellant knowingly sold heroin and fentanyl to Adkins, evidence also existed for the jury to find the state proved the requisite criminal intent for involuntary manslaughter. Additionally, the state demonstrated Adkins' death was a proximate result of the drug transaction.

{¶ 33} "The term 'proximate result' in the involuntary manslaughter statute involves two concepts: causation and foreseeability." *State v. Hall*, 12th Dist. Preble No. CA2015-11-022, 2017-Ohio-879, ¶ 71. In regards to causation, we have held that "[g]enerally, for a criminal defendant's conduct to be the proximate cause of a certain result, it must first be determined that the conduct was the cause in fact of the result, meaning that the result would not have occurred 'but for' the conduct." *State v. Feltner*, 12th Dist. Butler No. CA2008-01-009, 2008-Ohio-5212, ¶ 13. With respect to foreseeability, this court has held "when the result varied from the harm intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable." *Hall* at ¶ 78.

Furthermore, a defendant will be held responsible for foreseeable consequences "which are known to be, or should be known to be, within the scope of the risk created by his conduct." *Id.* at ¶ 79.

{¶ 34} The state presented evidence Adkins died from acute combined heroin and fentanyl poisoning. The testimony revealed that no other cause contributed to Adkins' death. Thus, the jury concluded based on the evidence presented that Adkins' death would not have occurred "but for" appellant selling him the heroin and fentanyl. Further, appellant knew or should have known of the possible consequences of ingesting heroin, as appellant testified he frequently used heroin himself and that he was aware of at least one other acquaintance dying from an overdose.

{¶ 35} In consideration of the corrupting another with drugs offenses, evidence was presented to show appellant knowingly furnished heroin and fentanyl to Adkins and Joslin or caused them to use such drugs, thereby causing them serious physical harm. We previously found above the jury's determination that appellant knowingly sold heroin and fentanyl to the couple was not against the manifest weight of the evidence. Pursuant to R.C. 2901.01(A)(5)(b) thru (c), serious physical harm means "[a]ny physical harm that carries a substantial risk of death" or "[a]ny physical harm that involves some permanent incapacity * * *." Dr. Looman testified overdosing on heroin and fentanyl creates a substantial likelihood of death. As explained above, Adkins died from ingesting the drugs purchased from appellant. Likewise, first responders found Joslin unconscious, which she testified occurred shortly after ingesting the same drugs as Adkins. *See State v. Church*, 12th Dist. Butler No. CA2011-04-070, 2012-Ohio-3877, ¶ 18 (stating losing consciousness constitutes serious physical harm as defined in R.C. 2901.01[A][5]).

{¶ 36} Despite this extensive evidence presented by the state, appellant conceded in his testimony that he facilitated the drug transaction that resulted in Adkins' death and

Joslin's overdose. Appellant testified his personal drug dealer sold the drugs to Adkins and that appellant just helped carry out the exchange because he was purchasing heroin at the same time. However, appellant's testimony does little to negate his criminal liability. Rather, even if the jury believed his testimony, a guilty verdict for complicity to commit the charged offenses would have likely resulted because appellant's testimony provided evidence for the jury to find appellant assisted, incited, or encouraged the charged offenses. *See State v. Brown*, 12th Dist. Warren No. CA2006-10-120, 2007-Ohio-5787, ¶ 12 (stating Ohio courts consistently define complicity as meaning to assist, incite, or encourage).

{¶ 37} For the foregoing reasons, we find the state properly established venue, the trial court did not abuse its discretion by providing jury instructions for venue in multiple jurisdictions, and appellant's convictions are not against the manifest weight of the evidence. Therefore, appellant's first and second assignments of error are overruled.

{¶ 38} Assignment of Error No. 3:

{¶ 39} THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING EVIDENCE OF "OTHER ACTS" AS SUBSTANTIVE EVIDENCE.

{¶ 40} Appellant contends the trial court abused its discretion by permitting the state to twice impermissibly introduce evidence outside the parameters of Evid.R. 404(B) to demonstrate appellant has a history of dealing drugs. Specifically, appellant argues the trial court erred by permitting the state to introduce appellant's text messages and the fact that he possessed $900 cash days before the couple overdosed. The trial court overruled appellant's objection and denied his motion for mistrial on the basis that appellant previously opened the door to the introduction of such evidence during his questioning of Detective Bail and Detective Mullis.

{¶ 41} "A trial court has broad discretion in the admission and the exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced

thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9, citing *State v. Finnerty*, 45 Ohio St.3d 104, 109 (1989). An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

**{¶ 42}** "'Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character.'" *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 19, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. However, if the defense first introduces or brings out other act evidence, then the state's later introduction of such evidence does not constitute reversible error and the defendant waives objection on this basis. *State v. Hammons*, 12th Dist. Warren No. CA2004-01-008, 2005-Ohio-1409, ¶ 9.

**{¶ 43}** On cross-examination of the detectives, appellant specifically inquired into whether information obtained from appellant's cell phone and the search conducted at appellant's residence was indicative of drug trafficking. This inquiry focused heavily on indications of appellant's drug use and the lack of any indication of drug trafficking. Based on these lines of questioning, we find the trial court properly found appellant opened the door to questions by the state regarding any possible indicators of drug trafficking by appellant. Specifically, the state inquired about text messages concerning possible drug transactions and a large sum of cash previously held by appellant. These questions were probative of the issues previously inquired into by appellant; therefore, "[t]he state did no more than walk through a door opened by the appellant." *State v. Waver,* 8th Dist. Cuyahoga No. 73976,

1999 Ohio App. LEXIS 3860, *22 (Aug. 19, 1999). Accordingly, appellant waived any objection to such evidence, and the trial court did not abuse its discretion by permitting its introduction.

{¶ 44} Therefore, appellant's third assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} TRIAL COUNSEL WAS INEFFECTIVE BY BEING UNPREPARED.

{¶ 47} Appellant argues several specific instances where his trial counsel's lack of preparation prejudiced him. The instances referenced by appellant include a lack of specific knowledge regarding prior convictions for impeachment during cross-examination, confusion regarding exhibit numbers upon presentation, and an unsuccessful argument attempting to preclude the state from amending the bill of particulars and indictment to include complicity.

{¶ 48} To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984); *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17. A defendant's failure to satisfy one part of the *Strickland* test negates a court's need to consider the other. *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 7.

{¶ 49} First, while trial counsel may have been a bit more disorganized than appellant desired, it necessitates neither a finding of deficient performance nor that but for this

disorganization there is a reasonable probability the result of the trial would have been different. Rather, trial counsel vigorously opposed venue at almost every stage of the criminal proceedings. Before trial, counsel interviewed witnesses, requested and received discovery, and consulted experts. At trial, he advocated on behalf of appellant by extensively cross-examining witnesses, questioning witnesses on behalf of appellant, moving for acquittal, providing an opening statement and closing argument, and preserving appellant's rights for appeal.

{¶ 50} Second, even assuming deficient performance by appellant's trial counsel regarding the amendments, appellant fails to demonstrate how but for his trial counsel's errors, the result of the trial would have been different. Contrary to appellant's claim otherwise, his trial counsel's advocacy to prevent the state from amending the bill of particulars and indictment – although unsuccessful – did not affect the outcome of the trial. The trial court heard arguments on the matter outside the presence of the jury. Thus, trial counsel's unsuccessful attempt to distinguish or persuade the trial court against the supporting case law did not result in any prejudice.

{¶ 51} Therefore, appellant's fourth assignment of error is overruled.

{¶ 52} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.