[Cite as *State v. Veley*, 2017-Ohio-9064.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-16-1038

        Appellee                            Trial Court No. CR0201501404

v.

Coreon Snow Veley                           **DECISION AND JUDGMENT**

        Appellant                           Decided:  December 15, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Coreon Snow Veley, appeals the February 8, 2016

judgment of the Lucas County Court of Common Pleas which, following a trial to the

court, found appellant guilty of involuntary manslaughter and trafficking in heroin. For the reasons that follow, we affirm.

{¶ 2} Appellant was indicted on March 6, 2015, on one count of involuntary manslaughter, R.C. 2903.04(A), a first-degree felony, trafficking in heroin, R.C. 2925.03(A)(1) and (C)(6)(b), a fourth-degree felony, and aggravated trafficking in counterfeit controlled substances, R.C. 2925.37(D) and (I), a fourth-degree felony. The charges stemmed from the death of minor-victim, Kurt Kohn, following his ingestion of a combined dose of heroin and fentanyl, sold to him by appellant. Appellant entered not guilty pleas to the charges.

{¶ 3} A trial to the court commenced on January 11, 2016, and the state presented the testimony of the victim's mother, Lisa, and brother, Kevin, Sam Watkins, law enforcement, a drug treatment center employee, the deputy coroner and chief toxicologist, a forensic scientist from the Bureau of Criminal Investigations ("BCI"), and an inmate from the Lucas County Corrections Center.

{¶ 4} The testimony of Lisa and Kevin Kohn, and Sam Watkins provided the timeline and details leading up to Kurt's overdose. The testimony presented provided that on August 12, 2014, Kurt and his friend, Watkins, met appellant to purchase heroin at a parking lot off Byrne Road and Dorr Streets in Toledo, Lucas County, Ohio. Appellant, also known as "C," was a regular supplier of heroin for the pair. During the summer of 2014, Watkins and Kurt purchased heroin from appellant at minimum every other day, and at times would purchase heroin several times a day. Watkins and Kurt had

2.

been buying and using heroin together since junior year of high school, when they first met.

{¶ 5} In May 2014, Kurt's older brother Kevin, also a heroin user, was surprised to discover that Kurt was using heroin. Kurt gave Kevin appellant's cell phone number and Kevin purchased heroin from appellant approximately 20 times. Kevin was arrested on July 24, 2014, near appellant's apartment, and heroin was found on his person.

{¶ 6} Near the end of June 2014, Kurt's parents became aware of their sons' heroin use and took measures to monitor them. As to Kurt, they sent him to see Dr. Kettlie Daniels for treatment and counseling which also required urine screens a couple of times a week. Kurt's mother screened his cell phone calls and texts, regularly searched his room and prohibited Kurt from driving, which made him reliant on her and Watkins to drive him to work. Kurt's parents also took his paycheck in order to keep him from purchasing drugs.

{¶ 7} On August 12, 2014, appellant was driving a Chrysler Town & Country which was registered to his wife when he met with Kurt and Watkins. Kurt paid appellant $40: $20 for the heroin and $20 that he owed him. Once the exchange took place, Kurt put the heroin, which was wrapped in an Ohio Lottery ticket, inside a CD case which he then placed in Watkins' glove compartment. Watkins testified that he did not immediately ingest the heroin because he did not want to tempt Kurt who had a drug test the next day. Kurt also did not want the heroin confiscated by his mother, so he left his cut in Watkins' car.

3.

**{¶ 8}** Watkins dropped off Kurt and went home, parked in the garage, and took the CD case into the house. He went to his basement, took his portion and snorted a line of heroin using a dollar bill. He used about a quarter of the total they had bought from appellant. Watkins put the remaining portion back into the CD case and returned it to the glove compartment of his car. Once back in the house, Watkins was using his computer but kept falling asleep. He then lost feeling in his legs. According to Watkins, he army crawled up the steps, opened the back door and vomited blood outside. He did not tell his family about the incident.

**{¶ 9}** The next day, Watkins and Kurt, with Watkins driving, left Kurt's house to get lunch. Before the two parted ways, Kurt removed the remaining heroin from the glove compartment and put it in his wallet. Watkins warned Kurt by stating that there was something wrong with the heroin. Kurt was excited by the prospect of potentially stronger heroin. Watkins dropped off Kurt at his house.

**{¶ 10}** Thereafter, Lisa Kohn took Kurt to his counseling appointment where he passed his drug screen. Lisa dropped Kurt off at home and drove to a nearby pharmacy to get his prescription for Suboxone (a heroin withdrawal aid) filled. Returning just minutes later, Kurt's mother found him in the bathroom on the toilet with his head on the tub. There was an Ohio Lottery ticket on the floor. He was pronounced dead at the hospital.

**{¶ 11}** After learning of Kurt's death, Watkins confessed to his parents about his heroin use; his father took him to Flower Hospital where he met with two detectives.

4.

Watkins told the officers about the purchase that occurred the day before. Watkins denied altering or adulterating the heroin while it was in his possession.

{¶ 12} In addition to the above testimony, extensive cell phone records, including text messages, were introduced at trial which showed the contact between appellant, Watkins, and Kurt, and aided in establishing the timeline of the events. In particular, the texts between appellant's and Watkins' phones, which Watkins stated were sent by Kurt, setting up the location of the final heroin purchase. Text messages between Kurt and his brother, Kevin, also bolstered the credibility of the testimony.

{¶ 13} Lucas County Deputy Coroner, Dr. Cynthia Beisser, testified that Kurt's death was caused by the combined drug toxicity of heroin and fentanyl. Lucas County Chief Toxicologist Robert Fortney testified that in August 2014, the Coroner's Office had just begun seeing cases of heroin and fentanyl in drug overdose fatalities. Since then, there has been a marked increase.

{¶ 14} A Lucas County Jail inmate testified that he "counseled" appellant regarding some discovery issues relating to his case. The inmate testified that during a discussion regarding heroin and what it was cut with, appellant stated that he got his fentanyl from a cancer patient. The inmate also admitted to an extensive criminal background.

{¶ 15} Defense counsel's cross-examinations centered on whether Kurt was present when the heroin at issue was purchased, whether Watkins was actually the purchaser of the heroin, whether Watkins adulterated the heroin, and the fact that the

5.

victim and Watkins had purchased heroin over one hundred times from appellant and never had an adverse reaction.

{¶ 16} Defense also worked to highlight inconsistencies in Watkins' statements to various law enforcement officers. Specifically, whether Watkins warned Kurt about the reaction he had to the heroin; although he may not have initially told officers that he warned him, Watkins insisted that he did the next day when they were in his car. Watkins acknowledged that he, in general, relayed somewhat varying versions of the events at issue. For example, Watkins initially stated that he purchased heroin from "C" 40 times but his trial testimony was that it was close to 100 times. Also, Watkins initially told police that he split up the heroin right after the purchase and that he put his cut in the CD case. At trial, he stated that Kurt put the entire purchase of heroin in the CD case and then put it in the glove compartment.

{¶ 17} Following the presentation of evidence and the court's denial of appellant's Crim.R. 29 motion for acquittal, the trial court found appellant guilty of involuntary manslaughter in violation of R.C. 2903.04(A), a felony of the first degree and trafficking in heroin in violation of R.C. 2925.03(A)(1) and (C)(6)(b), a felony of the fourth degree. The court merged the trafficking in a counterfeit controlled substance charge with the trafficking in heroin charge

{¶ 18} At sentencing, the trial court ordered appellant to serve five years in prison for involuntary manslaughter, and 18 months in prison for trafficking in heroin. Further,

6.

the trial court ordered the sentences to run concurrently to each other. This appeal followed.

7.

**{¶ 19}** On appeal, appellant raises three assignments of error:

Assignment of Error No. 1: The trial court erred in concluding that the drug transaction between Mr. Snow Veley and the alleged victim was the proximate cause of the alleged victim's death from an overdose.

Assignment of Error No. 2: The trial court's verdict was not supported by sufficient evidence and was against the manifest weight of the evidence.

Assignment of Error No. 3: The trial court erred as a matter of law when it applied the incorrect standard for "proximate cause" in reaching its verdict.

**{¶ 20}** In appellant's first assignment of error he argues that the trial court erred when it determined that the heroin transaction between appellant and Kurt was the proximate cause of Kurt's death. Appellant raises two specific issues: First, whether the death of the victim was "foreseeable" and "reasonably inevitable," and second, whether the intervening acts of Watkins using the heroin and then giving the remainder to Kurt the next day was an intervening act which broke the causal chain.

**{¶ 21}** We begin with the involuntary manslaughter statute, R.C. 2903.04(A), which provides: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

8.

**{¶ 22}** Appellant, relying on a case from this court, first argues that the victim's death was not a "reasonably inevitable" result of the alleged drug transaction between him and appellant. *State v. Hamrick*, 6th Dist. Lucas No. L-96-059, 1997 Ohio App. LEXIS 5643 (Dec. 19, 1997). Appellant contends that because the victim had purchased heroin over 100 times from appellant without incident, his death from an overdose was not likely or foreseeable.

**{¶ 23}** In *Hamrick*, the defendant led police on a chase in a stolen vehicle. Police pursued in three marked vehicles, lights and sirens operating, one of which lagged behind. *Id.* at 3. This third vehicle, instead of trailing the chase on the same street, proceeded northbound three blocks, drove through a red light and collided with a vehicle in the intersection; a nine-year-old girl was killed. *Id.* The defendant was convicted of involuntary manslaughter for her death. *Id.* at 5.

**{¶ 24}** On appeal, this court, reversing the manslaughter conviction, concluded that the involuntary manslaughter conviction was against the manifest weight of the evidence. In so finding, the court noted:

> "[A] defendant cannot be held responsible for consequences no reasonable person could expect to follow from his conduct; he will be held responsible for consequences which are direct, normal, and reasonably inevitable -- as opposed to extraordinary or surprising -- when viewed in the light of ordinary experience. * * * Here, that means that death reasonably could be anticipated by an ordinarily prudent person as likely to

9.

result under these or similar circumstances." *Id*. at 9, quoting *State v. Losey*, 23 Ohio App.3d 93, 95, 491 N.E.2d 379 (10th Dist.1985).

{¶ 25} Reviewing appellant's argument relating to the general foreseeability issue, we find that in the past decade Ohio courts have widely recognized that death by overdose of an illegal or illegally sold substance is a foreseeable result; inevitability has not been held to be the standard. For example, addressing foreseeability in a case where the defendant sold the deceased heroin and fentanyl and was convicted of involuntary manslaughter, the court noted that "'when the result varied from the harm intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable.'" *State v. Potee*, 12th Dist. Clermont No, CA2016-06-045, 2017-Ohio-2926, ¶ 33, quoting *State v. Hall*, 12th Dist. Preble No. CA2015-11-022, 2017-Ohio-879, ¶ 78. The court further stated that "a defendant will be held responsible for foreseeable consequences 'which are known to be, or should be known to be, within the scope of the risk created by his conduct.'" *Id.*, quoting *Hall* at ¶ 79. *See State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶ 91 ("The possibility of an overdose is a reasonably foreseeable consequence of the sale of heroin."). Further, "'for something to be foreseeable does not mean that it be actually envisioned.'" *State v. Wells*, 12th Dist. Warren No. CA2016-02-009, 2017-Ohio-420, ¶ 35, quoting *State v. Lovelace*, 137 Ohio App.3d 206, 219, 738 N.E.2d 418 (1st Dist.1999).

10.

{¶ 26} In the present case, it is immaterial that appellant sold Kurt and Watkins heroin upwards of 100 times with no outwardly adverse effects. It is also immaterial that it was not proven (though it was suggested) that appellant added the fentanyl to the heroin. The coroner testified that Kurt died from an overdose of heroin and fentanyl.

{¶ 27} Appellant next argues that Kurt's death was not proximately caused by appellant's act of selling him heroin because Kurt did not use the drug until the following day and it had been out of his possession. Further, his friend gave him the heroin despite having an adverse reaction.

{¶ 28} Determining direct causation in an overdose case, courts have considered whether "the result would not have occurred 'but for' the conduct." *Wells* at ¶ 35, quoting *Lovelace* at 216. Further, courts have found proximate cause where the offender supplied the drug to an individual who ultimately furnished the drug to the decedent; the end-result, death from an overdose, was the same. *See Patterson*. Finally, the suggestion that the ingestion of the drug itself was an intervening act has been rejected. *See State v. Baksi*, 11th Dist. Trumbull No. 98-T-0123, 1999 Ohio App. LEXIS 6271 (Dec. 23, 1999).

{¶ 29} In the present case, we note that the evidence established that Kurt and Watkins always purchased heroin together and did so on the night of August 12, 2014. Thus, the fact that Kurt did not continuously maintain possession of the heroin, the fact of which appellant had no knowledge, did not act to break the causal chain of the sale of heroin to Kurt which resulted in his death the next day.

11.

{¶ 30} Based on the foregoing, we find that Kurt's death from a heroin overdose was directly caused by appellant's sale of heroin to him and was a foreseeable result of the sale. Appellant's first assignment of error is not well-taken.

{¶ 31} In appellant's second assignment of error he similarly argues that the court's verdict was not supported by sufficient evidence or was against the weight of the evidence. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of a crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 32} When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988). The court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717

12.

(1st Dist.1983). The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Id.*

{¶ 33} Appellant's arguments relating to this assignment of error are identical to his arguments rejected above. Appellant again argues that there was insufficient evidence presented at trial as to the proximate cause element. Because we found that Kurt's overdose was foreseeable and proximately caused by appellant's sale of heroin to him, we conclude that the verdict was supported by sufficient evidence and was not against the weight of the evidence. Appellant's second assignment of error is not well-taken.

{¶ 34} In his third and final assignment of error, appellant asserts that the trial court erred by using the incorrect "proximate cause" standard in reaching its verdict. Appellant points to the following statement made by the court:

So, as I seem to recall, the arguments of counsel on closing arguments, there was an argument from Mr. Snow Veley by way of Mr. Potts with respect to whether the causing of the death of another was as a proximate result of the offender committing any felony. This Court's going to read what cause is. Cause. State charges that the act or failure to act of the Defendant caused the death of Mr. Kurt Kohn. Cause is an essential element of the offense. Cause is an act or failure to act, which in the natural and continuous sequence directly produces the death of Kurt Kohn, and without which it would not have occurred. Natural consequences – and

13.

this Court will place emphasis on further comments. The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's act or failure to act. The Defendant is also responsible for the natural and foreseeable consequences that result, that follow in the ordinary course of events from that act or failure to act.

This Court finds and believes that the selling of the heroin to Mr. Watkins and Mr. Kohn set into motion the natural and foreseeable chain of events that caused the death of Mr. Kohn.

So, therefore, the Court finds that the State of Ohio has proven each and every element of the offense of involuntary manslaughter beyond a reasonable doubt, and that is the Court's verdict.

**{¶ 35}** Appellant's argument is that because the court failed to either find that the death was "likely or reasonably inevitable" or that the intervening acts did not break the causal chain, the court erred in finding the element of proximate cause. Again, and explained in our analysis of appellant's first assignment of error and supported by Ohio case law, the death of Kurt from an overdose of heroin and fentanyl sold by appellant was a foreseeable result; it need not have been "inevitable." *Potee*, 12th Dist. Clermont No. CA2016-06-45, 2017-Ohio-2926, at ¶ 33. Further, there were no intervening causes of Kurt's death. Accordingly, appellant's third assignment of error is not well-taken.

14.

**{¶ 36}** On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed.  Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

                                                                  Judgment affirmed.


        A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.




Mark L. Pietrykowski, J.                                  _____
                                                                  JUDGE

Arlene Singer, J.                                  
                                                                  _____
James D. Jensen, P.J.                               
CONCUR.                                                           JUDGE

                                                                  _____
                                                                  JUDGE